---

## G———

### v.

## G———

[Submitted November 16th, 1903.  Decided November 21st, 1903. Filed July 9th, 1904.]

1. Marriage contracted by parties, one of whom is impotent, is not void, but voidable merely at the instance of the disappointed party, and may be ratified by such party.

2. Where a woman lived with her impotent husband for twenty years, and then, without suing for annulment of the marriage, separated herself and accepted a competent support from him for ten years longer, and until he discovered her in adultery and brought suit for divorce, such conduct on her part constituted an affirmance of the voidable marriage.

3. Alimony is only allowed when the husband has been guilty of a matrimonial offence, and impotence is not such an offence.

4. On petition for a divorce by the husband for adultery, and cross-bill by the wife charging impotence, conceding that adultery is an answer to the charge of impotence, each party is entitled to a simple decree, and the statute declaring that when each party is guilty of adultery neither shall have a decree, has no application.

5. On petition by a husband for divorce for adultery, followed by cross-bill by the wife charging impotence, the husband, on proving his charge, having first filed his bill, is entitled to relief.

6. Where a husband sued for divorce on the ground of adultery, and the wife succeeded in defending on the merits without having set up the impotence of the husband, and thereafter received support from him for

ten years, she was not entitled, in a subsequent suit by the husband for divorce for adultery, to set up the husband's impotence.

7. The statutory remedy for the wife for extreme cruelty of the husband is divorce *a mensa et thoro* and permanent alimony; but if the cruelty is sufficient to warrant a divorce *a mensa* she may separate herself from her husband, and such separation will constitute constructive desertion on his part, and if continued for the statutory period will entitle her to divorce *a vinculo.*

8. When a wife voluntarily separated herself from her husband on the ground of his cruelty, but received from him a competent monthly support, there was no such desertion on his part as entitled her to a divorce *a vinculo.*

9. A wife divorced *a mensa et thoro* is still under the obligation of chastity, and alimony is conditional on her performance of that obligation.

On final hearing on bill, answer, cross-bill and answer and proofs.

The petition is by husband against wife. It alleges that the parties were married in May, 1871; that they lived together until October, 1891, most of the time in this state, when they separated. It then charges that the defendant, at divers times between the 10th of August, 1902, and the 4th of January, 1903, committed adultery with one L. at a certain house in the city of New York.

The defendant, by her answer, admits the marriage, the residence in New Jersey and separation as alleged in the bill. She then denies the adultery as alleged.

By way of cross-bill she says:

"1. That before and at the time of and ever since the marriage of this defendant to the said petitioner, the said G. was physically and incurably impotent, and ever since the said marriage he has never consummated the marriage relation with this defendant.

"2. That this defendant lived with the said G. until the month of October, 1891, in the hope that said G. would and could be cured of his said impotency; that she finally learned that he was hopelessly and incurably impotent.

"3. That during said time said G. brutally abused and maltreated this defendant and frequently choked her and beat her so that her life was greatly in danger, and during a short period just prior to her separation, in the month of October, 1891, from the said G., he insisted upon and endeavored to force her to have vile, unnatural and criminal intercourse

with him, and that when she refused so to do he violently choked and beat and maltreated her.

"4. That by reason of said conduct and the disgust produced in the mind of this defendant through the same, and because she feared for her personal safety and because her happiness had been thereby totally destroyed, she separated from the said G., in the month of October, 1891, and refused longer to live under the same roof with him.

"5. That after her separation from the said G., he filed a bill or petition for divorce in this court against this defendant on the ground of adultery, and named therein a number of men with whom he charged this defendant with having committed adultery, and that the said charges were denied by this defendant and the said cause came on for trial, and the said bill was dismissed, with costs, in or about the year 1892.

"6. That since the filing of said bill and since the separation between the said defendant and the said G. they have never lived together under the same roof, and that by reason of the premises aforesaid the said G. has willfully, continuedly and obstinately deserted this defendant for the period of over two years last past.

"7. Wherefore, she prays that she may be divorced from said G. for the cause of willful, continued and obstinate desertion aforesaid, and that she may have such further or other relief in the premises as the nature of the case may require, and she will ever pray," &c.

To this cross-bill the petitioner files a formal replication, denying that the separation was due to either impotence or cruel treatment alleged in the cross-bill; denies the impotence; denies the cruelty and desertion, and alleges that the separation was entirely voluntary on the part of both parties and was begun and ever since continued by mutual agreement (this is admitted by defendant); that he has during such separation and until October, 1902, supported the defendant by regular monthly payments. (This is admitted by defendant.)

For an allegation by way of demurrer petitioner sets up that the separate allegations in the cross-bill of impotence and cruelty are incongruous and render the bill multifarious; and further alleges want of sincerity and good faith in the charge of impotence by reason of the great delay of the defendant to make complaint on that ground.

The cause was brought to a hearing before a vice-chancellor on these issues on the 21st and 22d of October, 1903.

At the opening of the case the petitioner moved to strike out from the answer the allegation of impotence, but the vice-chancellor suggested that the matter should be reserved until

after the issue of adultery should be tried and disposed of, in which suggestion both parties acquiesced.

The evidence on the issue of adultery was then produced with the result that, on Friday, October 23d, 1903, the vice-chancellor pronounced against the defendant, finding her guilty as alleged in the petition, and gave the parties time to present written arguments on the remaining questions.

*Mr. Joseph Coult* and *Mr. Jay Ten Eyck,* for the petitioner.

*Mr. Warren Dixon* and *Mr. Peter Bentley,* for the defendant.

PITNEY, V. C.

The record, as it now stands, presents questions of some novelty. Cases of impotence, especially in this court, are so rare that the rules governing the action of the courts in such cases are not thoroughly settled.

In England the notion seems to have been entertained formerly that complete impotence rendered the marriage void *ab initio,* precisely the same as would the existence in life at the time of the marriage of an undivorced spouse of one or the other of the parties; or the fact that the parties were related within the prohibited degrees of consanguinity. This is evidenced by the mode in which suits were framed. The English judicial reports show that suits for a declaration of nullity on account of impotence were framed in this wise: A, falsely called B v. B. This was the form used in suits for nullity for the other two causes mentioned. But the later cases establish clearly the doctrine that contracts of marriage between parties, one of whom is impotent, are voidable merely. The latest case is *Turner* v. *Thompson, L. R. 13 P. & D. (1887) 37.*

In this state, by the revision of March 27th, 1874, section 4, it was for the first time declared that

"Divorces from the bond of matrimony may be decreed in case the parties, or either of them, were, at the time of such marriage, physically and incurably impotent, and all marriages in such case shall be invalid from the beginning and absolutely void."

Thus placing such a marriage upon the same basis as disability on account of a former husband or wife living, or on account of a marriage within the degrees of kinship prohibited by law, except that the issue of marriages within the degrees prohibited by law were not rendered illegitimate.

This classification was clearly illogical in that it made no distinction between a decree for nullity and a decree of divorce. That such a distinction exists was pointed out in the case of *Rooney* v. *Rooney, 54 N. J. Eq. (9 Dick.) 231* (at *p. 241*).

The legislature, in the revision of the Divorce act of 1902 (*P. L. of 1902 p. 502*), has changed the classification and has provided for decrees of nullity in the cases of another spouse living at the time of the second marriage and of marriage between parties within the prohibited degrees of consanguinity, and has provided for decrees of divorce from the bond of matrimony in the cases of adultery, desertion and incurable impotence, using the following language:

"In case the parties, or either of them, was at the time of the marriage physically and incurably impotent, or was incapable of consenting thereto, and the marriage has not been subsequently ratified."

This classification is more logical. The two causes for nullity *ab initio* present the case of an absolute incapacity of one of the parties to contract a marriage, and the validity of such a marriage may be impeached at all times, in all places, by all parties and for all purposes. The only value of a judicial decree of nullity in such cases is that it works an estoppel and settles the question of fact for all time and so dispenses in subsequent cases with proof *in pais* of the disability.

In a case of impotency the parties have the power to contract and the marriage is binding for all purposes unless it is dissolved by a decree of a court at the instance of the party having the right to make the complaint.

Thus it seems to me clear that the widow of an impotent husband would be entitled to dower in his estate in the absence of a decree of dissolution.

The ground upon which the decree of dissolution is based is not an original incapacity to contract but the entire and complete failure of the consideration of the marriage contract. Hence, the better doctrine is that the contract of marriage is voidable merely and not void *ab initio.*

The section relating to impotence in the act of 1902 varies from that of 1874 in another important particular. That of 1874, as we have seen, declares the contract "invalid from the beginning and absolutely void." That of 1902 gives the right of divorce with the proviso "and the marriage has not been subsequently ratified."

Thus it appears, that it not only has not declared the marriage void *ab initio,* but has, as I read the statute, assumed that it may be ratified.

This construction is undoubtedly the true one unless it can be held that the words "has not been subsequently ratified" relates only to the member of the sentence immediately preceding it, viz., "or was incapable of consenting thereto."

Be that as it may, the clear trend of authority, as I have stated, is that the marriage is not void *ab initio* but merely voidable at the instance of the disappointed party. If that is so, then the correct doctrine is that such party may ratify it.

It is suggested with much force that such ratification may result from a long continued acceptance and enjoyment of the benefits of a merely platonic marriage, so that the disappointed party will not be permitted after such long enjoyment to repudiate the contract.

This subject is elaborately discussed and carefully considered, with a complete citation of authorities, in several English cases.

The first is that of *H*—. *f. c. C*— v. *C.,* heard below, in 1860, before Sir Cresswell-Cresswell, Sir Edward Vaughan-Williams and Sir George Bramwell, reported in *1 Swab. & T. 605; 29 L. J. Mat. Cas. 81; 6 Jur. (N. S.) 348;* and on appeal, *sub nomine, Castleden* v. *Castleden, 9 H. L. Cas. 186.*

There, as here, the petitioning wife had lived for several years with her husband; then, ascertaining his impotence, one of her parents charged him with it, and he refused to live further with his wife. She then for a few years supported herself and

then compelled her husband, indirectly, to furnish her with a complete or partial support, which she accepted. She failed in her suit, partly on the ground that she had not resorted to the extreme process of the English court to compel her husband to submit to physical examination, and hence had not furnished the best evidence of his impotence, but mainly, as I think the several judgments plainly show, because she had ratified the marriage contract by long acquiescence and accepting support from her husband.

The next case is that of *M*—. *f. c. B*—. v. *B*—. (1864) before the judge ordinary, Sir Cresswell-Cresswell, reported in *33 L. J. Mat. Cas. 203.*

The parties were married in August, 1853, when the petitioning wife was twenty-nine years old; the husband was incurably impotent and the suit was brought ten years later.

The petitioner admitted that she had brought the suit, in part at least, for the purpose of vindicating herself from the rumors or reports which were circulated that the separation, which occurred in that year, was due to her violent temper, and that she was insane and not fit to cohabit as a wife. Her petition was refused, on the ground that it was, to use the expression of the English jurists, "not sincere but due to other motives."

A third case, and one more nearly in point, is that of *Reynolds, alias Wilkins,* v. *Reynolds, 45 L. J. P. 89,* also reported in *L. R. 1 P. & D. (1876) 405,* decided by Sir Robert Phillmore in a considered and written judgment.

There the parties were married in 1849 and the wife brought her suit in 1875. The proofs showed that the husband was impotent by reason of malformation; that they lived together for a year and nine months and then separated, to use the language of the wife, "because he ill-treated me and because we did not live comfortable." They lived separate for nine years, and she then returned to her husband and lived with him for five and a half years, and then separated by reason, as she said, of his ill-treatment and his impotence. They then lived separate until 1875. It was held, after an elaborate citation of authorities, that the petitioner was not entitled to succeed, be-

cause she had not shown two requisite elements, sincerity and promptness.

Another English case worth mentioning is that of *M——., alias D——. v. D——.*, reported in *L. R. 10 P. & D. (1885) 75, 175.* There a suit was brought by the wife against her husband for nullity for impotence and a cross-suit by the husband against the wife for divorce for adultery. The suit for impotence was first tried and the decree was granted. The adultery was not pleaded as a defence in the nullity suit, nor does it appear that the impotence was pleaded as a defence in the suit for adultery, but the proofs in the suit for nullity showed strong probability of adultery.

The petitioner contends that the present case shows ratification by the defendant, also lack of sincerity on her part.

It seems to me that the point is well taken. The defendant, after living twenty years with the petitioner in the hope of his recovering his virility, instead of suing for nullity separated herself from him and accepted a competent support from him for ten years, and, so far as appears, would have continued so to accept it if he had not, upon discovery of her adultery with another man, brought suit for a divorce.

This conduct on her part was a distinct affirmance of the marriage relation. Necessarily so, since there can, I think, be found no foundation in reason or authority for the position that a woman, who seeks a dissolution of the marriage tie on the ground of her husband's impotence, is entitled to permanent alimony. Such alimony is only given where the husband has been guilty of a matrimonial offence, and impotence is not such an offence in any sense of the word in that connection.

In the present case it is to be observed 'that neither the impotence nor the desertion is set up in the answer as a defence to the petitioner's bill. Their presence and office is confined to that part of the answer which is declared to be a cross-bill and which prays for a divorce.

The answer was drawn by able and experienced counsel, and I cannot conceive that its frame was the result of oversight or accident. Indeed, the specific prayer in the cross-bill for a

divorce is based on the charge of desertion and not on the charge
of impotence.

But supposing counsel for defendant asks the court to amend
the answer in that respect, or to consider the charge of impotence
to be the basis of the prayer for other relief, viz., dissolution
of the marriage, and suppose the adultery is no answer to her
charge of impotence, and that charge should be admitted and
the defence of acquiescence and ratification be overruled, the
result would be that each party would be entitled to a divorce,
and they are not within the ban of the statute which declares
that if both of the parties are guilty of adultery neither shall
have a decree.

Then, I repeat, each party is entitled to a simple decree, and
the situation is not changed from what it would be if no asser-
tion of impotence had been made.

But I do not think that the parties stand in this respect on an
even footing. On the view of the law most favorable to the de-
fendant the marriage was in force and binding on both parties
until the present proceedings were commenced by the petitioner
and thence until, at the earliest, defendant filed her cross-bill,
asking that the marriage be annulled. This result follows from
the fact that it could only be annulled for impotence at her
option and on her application. It follows that petitioner was
at the filing of his bill *rectus in curia,* and, having proven his
charge of adultery, is entitled to relief.

I am unable to perceive how the defendant can supersede that
right by coming in after petitioner's right has accrued and, so
to speak, become vested, and asking that the marriage be
annulled.

The maxim "He who is first in time is strongest in right"
applies.

There is another fact in the case which seems to me to weigh
against the defendant in this part of the case.

She alleged and proved that shortly after the separation her
husband sued her for divorce on the ground of her adultery;
that she defended on the merits and was successful. She does
not allege that she set up his impotence as a defence, and the
pleadings in that case, put in evidence in this, show that she

did not. And yet, according to the present theory of her coun-·
sel, it would have been a perfect defence, or, at least, would
have entitled her to a decree of divorce against him in the same
suit. She apparently preferred to continue, as she did for ten
years at least, to enjoy the benefits of the marriage relation.

I think, therefore, that the charge of impotence must be dis-
regarded and that petitioner is entitled to an order striking it
from the record.

Turning now to the charge of cruelty and constructive de-
sertion based thereon.

This issue was not tried, but, at the suggestion of the court,
counsel of defendant was asked if the defendant on the admitted
facts could succeed.

We observe that it is not set up as a defence to the petitioner's
charge of adultery but is inserted in the cross-bill as a basis of
affirmative relief against the petitioner, so that it is probably
not necessary to consider the simple question whether extreme
cruelty of a character sufficient to sustain a decree for divorce
*a mensa et thoro,* standing by itself, is a defence to an action
for divorce founded on the adultery of the wife, which question,
so far as I know, has never been determined in New Jersey.

The simple question, then, is whether petitioner has been guilty
of such desertion of his wife as would enable her to maintain
an action against him for divorce *a vinculo matrimonii* (which
I shall assume for present purposes, though, like the other case,
I believe, it has never been so held in New Jersey), would, if
properly pleaded, be a defence to an action by the husband
against the wife for divorce on the ground of subsequent
adultery.

The statutory remedy for the wife against the husband for
extreme cruelty on his part is a divorce *a mensa et thoro* and
permanent alimony.

It seems, however, to be the well settled doctrine in New
Jersey that if the cruelty is of a character sufficient to warrant
a divorce *a mensa et thoro,* the wife may separate herself from
the husband, and such separation will be held to amount to a
desertion on his part, known as constructive desertion, and if

continued for the statutory period will entitle the wife to a divorce *a vinculo.*

This doctrine, though frequently stated in our reports by distinguished judges, was first acted on in this state in a reported case in *Weigand* v. *Weigand, 41 N. J. Eq. (14 Stew.) 202.* That, however, was a suit, founded on the twentieth section of the Divorce act, for support merely, which involved desertion but not continued for the statutory period to authorize a divorce, and while it was based on the doctrine that a husband who drives his wife away from his house by his cruel treatment of her is guilty of desertion in such manner as to warrant a decree at once in favor of his wife for support, it does not deal with, or throw any light upon, the question as to what must be the character of the continuance of such a desertion in order to warrant a decree *a vinculo.*

The first and only reported case which dealt with that question is *McVickar* v. *McVickar, 46 N. J. Eq. (1 Dick.) 490.*

There the separation had lasted for about twenty years, during which time the wife had received no support from her husband. The cause of the cruel treatment was his devotion to intoxicants acting upon a naturally brutal disposition. The use of intoxicants with their effect upon his conduct continued for three or four years after the separation. He then appeared to reform, but made no attempt to make known to his wife his reformation or to resume his cohabitation with her or to support her. So there was not only the cruelty, which, in the opinon of the court, was a sufficient justification of the wife in leaving the husband, but also a complete failure on his part to furnish her with any support.

I can find no case where there has been a constructive desertion, justified by cruelty, and the husband has during the continuance of the desertion supported his wife, in which a decree *a vinculo* has been granted.

On the contrary, I find the case of *Kyle* v. *Kyle, 52 N. J. Eq. (7 Dick.) 710,* where there was a suit for divorce on the ground of desertion, where the petitioner charged that the desertion occurred in July, 1880, and the petition was filed some ten

years later, and less than a year later she sued him in New York for a divorce *a mensa et thoro* on account of his cruelty and succeeded. It was held that such decree was a bar to her action. While that case is not in point I think it has some significance.

In the present case the wife upon her separation, as the evidence, as I recollect it, clearly shows and as was admitted by counsel, accepted from her husband and rested satisfied with a competent monthly support, which was continued up to the time that he learned of her adultery.

In short, she received, without a suit, all that she would have obtained by a suit by reason of her husband's cruelty, and, as I have said, a separation from bed and board and alimony is the statutory remedy for extreme cruelty.

In my judgment, in order to turn a voluntary separation by a wife by reason of cruelty into a desertion by the husband with such a continuance as satisfies the statute, there must not only be the cruelty justifying the separation, but there must be the failure on the part of the husband to render to his wife that support which is the statutory punishment for his cruelty, and that failure must continue for the statutory period.

If this view is correct, the cruelty alleged by the wife, the defendant in this case, will not help her, and it is not worth while to try the issue unless the petitioner, out of abundant caution in case of appeal, prefers to traverse the allegation.

It only remains to say that, supposing the cruelty were judicially established and the monthly payments proven in the case had been awarded by the court as alimony, the continuance of such alimony would be conditional upon the wife living a chaste life.

Under a divorce *a mensa et thoro* the marriage relation still exists and with it the duty of chastity. Such a divorce is not a license to the wife to indulge in sexual connection with another man, and the argument from the case of a divorce *a mensa et thoro* to that of a voluntary support and its acceptance is *a fortiori*. In the latter the court will introduce into

the agreement for support the element that it will be conditioned upon a chaste life.

The case briefly stated, *in solido,* is this:

The parties were married in 1871 and lived together twenty years when they separated by mutual consent for the reasons, now for the first time claimed by the wife, first, for his impotence, and second, for his cruel and bestial practices.

Shortly after the separation the husband sued the wife for divorce on the ground of her adultery, which she defended on the merits, not setting up either the impotence or the cruelty, and succeeded in her defence. She then accepted from her husband a competent support in money and enjoyed it for ten years, and then solaced herself with the marital ministrations of another man while enjoying her husband's pecuniary support. Being discovered in her adultery and sued therefor by her husband she then, for the first time, sets up his impotence and cruelty, not as a direct defence but as the ground of a divorce from her husband. Such a case on her part does not commend itself to an equity judge.

I will advise a decree according to these views.


The vice-chancellor adds the following:

After the foregoing opinion was promulgated and a decree accordingly advised but not yet signed by the chancellor, a motion was made before me to open it and permit the defendant to make actual proof of the impotence alleged. This motion was based on several grounds. The only one of which I considered open to discussion after the foregoing opinion was that the evidence was competent under the general denial of the adultery by way of showing acquiescence, consent and connivance. I denied the motion on several grounds: *First,* that it could only operate as a defence by way of confession and avoidance and had not been so pleaded; *second,* that at the time of the trial it had not been offered to be proved and put in evidence under the issue of adultery or no adultery; and *third,* that the whole course of the proof of the case by the defendant and the facts established thereby in connection with the pleadings negatived the idea of actual consent, con-

nivance or acquiescence. Those facts are that the parties separated by mutual consent in 1891, and had lived separately ever since, and apparently had not met; that during the period covered by the adulteries proven herein, and for some time prior thereto, the petitioner was living in the city of Trenton and the defendant in the city of New York, over fifty miles apart; that the petitioner had sued defendant for adultery in 1892, which of itself was the very opposite of consent, acquiescence or connivance; that defendant did not set up in defence to that action his impotence as a ground of defence or any connivance based thereon. In short, I found no place in the case proven by the defendant where the defence of positive consent, connivance or acquiescence could reasonably intervene, and so far as regards any possible constructive consent arising out of the bare fact of the impotence, I think it is covered by my previous opinion.

I ought to state that the counsel who actually tried the case before me asserted, as I understood him, that he did, in fact, formally offer to prove the impotence while his client was on the stand, but an examination of the stenographer's notes shows that he was mistaken.

Then the other counsel of defendant urges that, as a result of the mode in which the court requested the several issues to be dealt with, his client has missed the opportunity of mitigating the character of her offence and of putting herself in the position of being entitled to the charitable view thereof, which naturally arises from the impotence of her husband. I think the defendant is not entitled to the assistance of the court in that direction. Before she solaced herself with the marital ministrations of another man, she should have dispensed with the pecuniary support of her lawful husband and should have sought and obtained a dissolution of the marriage tie.

It was suggested that the discussion of the value of the cross-bill was sprung upon the defendant's counsel without proper notice.

The fact, as shown clearly by the stenographer's notes, which

were written up within three days and with which my own recollection agrees, is that after I had stated my reasons for finding the defendant guilty of the adulteries charged, a full discussion followed as to the argument of the motion to strike out the charge of impotence found in the cross-bill. A day was fixed on which the defendant's counsel should hand in a written argument. The defendant's counsel subsequently asked for and took additional time for that purpose and then handed up a typewritten argument covering the question.

There can be no question that the defendant's counsel had every opportunity necessary to support the value of his client's case on that charge except the actual production of the proofs. As my opinion is, of course, based upon the truth of the allegation of impotence, I do not see how defendant is injured thereby, and if I am wrong the defendant has her remedy by appeal.