MILDRED TOMPKINS, petitioner,

*v.*

HOWARD TOMPKINS, defendant.

[Decided August 15th, 1920.]

1. If a wife be a virgin and apt after three years' cohabitation, the husband will be presumed to be impotent, and the burden will be upon him to overcome the presumption by proof that he is not at fault, in an action by the wife to annul the marriage, such rule being the essence of the "doctrine of triennial cohabitation."

2. In the present cause—*Held*, that such presumption is not overcome although physicians testified that the husband appeared to be normal and the husband testified that he simply forbore sexual intercourse because it was painful to the wife.

3. A three years' cohabitation is not essential to show a husband's impotency, where it may be proved before, although a three years' trial is required to raise the presumption of impotency.

On bill, &c.

*Messrs. Riker & Riker (Mr. Theodore McC. Marsh)*, for the petitioner.

*Mr. William L. Brunyate*, for the defendant.

BACKES, V. C.

This petition is for annulment of marriage on the ground of incurable impotency. The couple, young persons, have cohabited for five years and the wife is still a virgin. She is physically and mentally normal and capable of copulating. Her virginity and aptness are established beyond question by three physicians who examined her recently. She testified that her husband never tried to function; that he made no effort at penetration, and that the extent of his performance was to lie upon her, with parts limp between her thighs, and agitate. He vigorously pro-

tested his virility, but admitted the non-consummation of the marriage, and also that he sought gratification in external attrition, as his wife described, because, as he says, his efforts at sexual intercourse were painful and distressing to her. He submitted to an examination by one of his wife's physicians, who testified that he was structurally a male, normal in the parts and to all appearances capable of coition. In build, carriage, voice and deportment, as I observed him in court, he appeared to be up to the standard.

If there is genital impairment it is latent and scientifically undiscoverable; or the lapse may be due to a psychosis, well recognized by the medical science, and discussed in some of the divorce cases in England—a mental condition rendering him physically impotent as to his wife, though potent as to all other women. Were it necessary for the judgment to pronounce the cause of impotency, I would not be unwilling to ascribe the *impasse* between this couple to this peculiar phenomenon. In *N——r* v. *M——e, 2 Rob. Ecc. 625,* Dr. Lushington annulled a marriage on the report of inspectors that the husband was impotent as regards his wife, and held, in effect, that the law was not concerned further than this, observing that impotency *quoad hanc* was as prejudicial to the wife as universal impotency.

In approaching a decision of the issue raised by the pleadings —the impotency of the husband, which is bitterly controverted by sharply conflicting and recriminating testimony—I shall apply the rule of the English courts taken from the civil law as modified by Justinian, called the *Doctrine of Triennial Cohabitation.* The essence of that doctrine is, that if the wife be a virgin and apt after three years' cohabitation, the husband will be presumed to be impotent, and the burden will be upon him to overcome the presumption by proof that he is not at fault. It is applied as a hard and fast rule in England. *Lewis* v. *Hayward, 35 L. J. (N. S.) Prob., M. & D. 105; G—* v. *M—, 10 App. Cas. 171; C—* v. *C—, 29 L. J. (N. S.) 81; S—* v. *A—, 3 Prob. & Div. 72; F—* v. *P—, 75 L. T. 192; Marshall* v. *Hamilton, 3 Swab. & T. 517; G—* v. *G—, L. R. 2 Prob. & Div. 287; F—* v. *F—, 34 L. J. (N. S.) Prob. & M. 66; Welde* v. *Welde, 2 Lee Ecc. 580; Countess of Essex Cases, 2 How. St. Tr. 786; Spar-*

row v. *Harrison, 3 Curt. Ecc. 16;* Anonymous, *2 Rob. Ecc. 625;*
*S— v. E—, 3 Swab. & T. 240; G— v. S—, 1 Spinks' Ecc. 389;*
*A— v. B—, 1 Spinks' Ecc. 12.*

Mr. Bishop devotes a subchapter to the rule. *2 Bish. M., D. &
S. 496.*

I do not find countenance given to the doctrine in any of the
reported cases in this country, but I can conceive no good reason
why it should not be introduced into our jurisprudence as a rule
of law in the decision of these vexed questions of fact, to which,
usually, the parties alone bear witness, each blaming the other.
The doctrine is logical and sound in principle and helpful and
convenient in the proper administration of justice. It appeals
to one's sense of justice, for it would seem but fair that after
three years' probation a husband ought to be made to account for
his dereliction, to his disappointed and complaining spouse. The
period is none too short. Whatever may have been the cause in
the past for not giving expression to the rule (perhaps, it was
due to an early impression of the bench and bar) that the court
of chancery was without inherent jurisdiction to annul a mar-
riage for impotency. notwithstanding the obviousness of the
fraud, because its English prototype had not exercised it—a view
voiced in *Anonymous, 24 N. J. Eq. 19.* In later cases there have
been annulments for various kinds of fraud, some less serious in
their consequences than impotency. *Carris v. Carris, 24 N. J.
Eq. 516; Crane v. Crane, 62 N. J. Eq. 21; Davis v. Davis, 90
N. J. Eq. 158; Bohner v. Edsall, 90 N. J. Eq. 299; Ysern v.
Horter, 91 N. J. Eq. 189.* There is no valid reason for not
adopting it as a part of our common law, since the legislature
has added to the domestic relation jurisdiction of the court of
chancery incurable impotency as a cause for annulment. While
novel, and an innovation in our practice, there is no reason why
the rule should not have a place in our judicial system, there to
subserve the administration of the law as it has for ages under
a system which we inherited.

The burden, then, being shifted to the husband to excuse or
justify the plight of his wife, the question comes to one of belief
in his story of forbearance for five years, under most trying cir-
cumstances, simply because sexual intercourse was painful and

distressing to her I have misgivings.   Such solicitude of a groom is noble, of a husband, heroic.   Few have the fortitude to resist the temptations of the honeymoon.   But human endurance has its limitations.   When nature demands its due youth is prodigal in the payment.   Men are still cavemen in the pleasures of the bed.   The sex may be more temperate, but none the less passionate, and heedless of the penalty.   They do not shirk the initiation nor shrink from the consequences.   The husband's plea does not inspire confidence.   Common experience discredits it. And if, in fact, he had the physical power, and refrained from sexual intercourse during the five years he occupied the same bed with his wife, purely out of sympathy for her feelings, he deserves to be doubted for not having asserted his rights, even though she balked.

The presumption of impotency has not been overcome and a decree of nullity will be advised.

NOTE.—Mr. Biddle says:

"The rule as to a three years' cohabitation being required before suit brought was retained in England down to recent times in case of frigidity but it has now been laid aside, the court requiring only a sufficient cohabitation to establish the fact." *Bid. N. J. Div. Pr. (2d ed.) 56.*

This observation is inaccurate and confusing.   The rule is intact in its entirety, and its requirement of a three years' trial to raise the *presumption* of impotency has not been dispensed with, and a cohabitation of less duration has not been accepted in lieu "to establish the fact" of impotency.   Mr. Biddle would have been more nearly correct had he said, that since the change in the law of evidence admitting the testimony of the wife the courts have been able to find impotency as a fact, and that, therefore, the rule was inapplicable in most cases where theretofore it had to be resorted to for want of actual proof.   In this sense only has the rule been laid aside; not really laid aside but kept within its legal sphere of operation.   A three years' trial was never essential where the husband's incapacity could be proved before.   This was pointed out by Wilde, J., in *F.* v. *G., 4 Swab. & T. 86* (at *p. 94*), where he said of the rule: "This rule only applies when the impotence is left to be presumed from

continued non-consummation, for, where the impotence is clearly proved *aliunde,* the court has never resorted to it." And as was held in *G.* v. *M., supra:* "Every case need not be fortified with the presumption; for, although no presumption can be raised from the absence of consummation within a less period than three years, yet positive evidence may be given from which the same inference of inability may be drawn."

The principle of presumption has not been departed from, and where there is no consummation after three years' probation the application of the rule is imperative. This was declared to be the settled law in *Lewis* v. *Hayward (1866), supra.* In that case the couple cohabited fourteen years without result. Each was apparently physically capable and laid the deficiency against the other. The divorce court refused a decree because the wife's proof failed to show that the husband was responsible. The house of lords held the rule of presumption to be in full vigor and reversed. In *G.* v. *M. (1885), supra,* a Scotch case, that august tribunal again referred to the rule with approval, but pointed out that three years' cohabitation was not *sine qua non* to a decree of annulment nor a bar to the establishment of impotency by competent evidence short of a three years' cohabitation.

There are but two nullity cases for the husband's impotency reported in the English divorce reports from that case to date and they do not involve the rule. In *B.* v. *B. (1901), Prob. 39,* the husband refused to occupy the bed with his wife, and declined to submit himself to a physical examination. The court held it was entitled to draw the inference that there was an impediment on the authority of *F.* v. *P., supra.* In *G.* v. *G. (1912), Prob. 173,* the petition was by the husband for his wife's frigidity. She denied and cross-petitioned for his impotency. The court was satisfied from the proofs that the marriage had not been and could not be consummated and pronounced judgment on the petition of both, as Bargrave Deane, J., said, "Without putting the slur of impotency on either." The other cases of nullity reported (*W.* v. *W. (1905), Prob. 231; W.* v. *W. (1912), Prob. 78,* and *Napier* v. *Napier (1915) Prob. 184*) were for the wife's frigidity, and naturally the rule was not involved.

The court inferred incapacity as a fact upon proof of the wife's refusal of access and her refusal to submit to inspection, and, in one instance, upon her admission that she was "no good." In *Dickinson* v. *Dickinson (1913), Prob. 198,* Evans, Pr., declined to infer incapacity in the wife based upon her refusal of intercourse, but he granted a decree based on the refusal. The court of appeal, in *Napier* v. *Napier, supra,* disapproved the doctrine on the ground that a refusal to consummate was not a cause within the Divorce act.