The wife brings an action for maintenance and the husband has interposed a counter-claim for a divorce on the ground of desertion. The parties were married December 20th, 1925, and lived together until October 14th, 1926, when the wife left her husband and has not since returned. Therefore, unless the wife justifies her leaving by misconduct of the husband, she could not succeed in her maintenance action and the husband would be entitled to a decree for desertion.
The wife contends that she was forced to leave the husband on account of his cruelty. It is a conceded fact that the marriage *Page 447 
has never been consummated. Each blames the other for this. It is established by undisputed medical testimony that the wife is normal sexually and apt for matrimony.
Defendant testified to his virility and presented medical testimony to the effect that there was no reason discovered by his physicians, who examined him, why he should be incapable of intercourse.
From the time of the marriage until the separation in October, 1926, the parties occupied the same room and bed together most of the time except during a period when the wife was seriously ill. According to the wife's version, during this ten months she was always ready and willing to submit to the consummation of the marriage but that either because of impotence or unwillingness on the part of the husband, no normal intercourse took place. She says it was the constant practice of the husband to compel her to submit to unnatural practices which aroused her passion but did not gratify it. She says that as a result she reached such a serious condition mentally and physically that she was forced to leave her husband. Her testimony would indicate that the husband is probably impotent, at least quoad hoc. There may have been a psychosis rendering him impotent as to his wife even though there be no universal impotency, or there may have been some latent genital impairment. This phase of the matter has been discussed in Tompkins v. Tompkins, 92 N.J. Eq. 113.
The husband's contention is that he is sexually normal, is fully capable of intercourse and that the only reason that the marriage was not consummated is that the wife from the time of the marriage constantly refused him intercourse. According to his testimony she gave many and various excuses for her failure to consummate the marriage.
The defendant contends that as a matter of law on the statement of facts of the complainant she cannot succeed, that if he be impotent the only remedy of the complainant is an action for an annulment of the marriage. The analogy is cited of the decisions in this state in which it has been held that adultery is not cruelty. But the complainant is *Page 448 
not seeking the setting aside of the marriage and it is her option whether she shall ask an annulment or whether she shall ratify the marriage. The marriage is merely voidable at the instance of the disappointed party. It was so held in the case ofG. v. G., 67 N.J. Eq. 30 (at p. 35). This decision was quoted with approval on this point in Kirschbaum v.Kirschbaum, 92 N.J. Eq. 7.
In the case now before the court impotence of the defendant was not conclusively proved and in fact is vigorously denied by the defendant. Complainant does not know whether defendant was impotent or whether his sexual conduct with her was merely perversion. Complainant does not show merely non-consummation of the marriage but sets up a course of conduct of the defendant consisting of unnatural practices which finally completely broke down her health. Such practices, which need not be detailed here, if persisted in would undoubtedly make it unsafe and improper for her to cohabit with him and therefore bring his conduct within the definition of cruelty as laid down by our courts. Therefore I am constrained to hold that complainant is not barred from the relief she asks for, if her version of the facts be accepted.
As to the actual circumstances of the cohabitation of the parties, there is a flat and direct contradiction in their testimony. From the nature of the case the facts must be determined chiefly from their testimony alone. Deductions may be drawn from other facts and circumstances which enable the court to determine the probability as to which party is to be believed. The husband testified he was perfectly normal and made constant requests for consummation, but that the wife for a period of ten months uniformly put him off on one pretext or another. The husband's story as to some of these pretexts was wholly unconvincing.
On the other hand it is conclusively shown and not disputed that the wife at the time of the marriage was under thirty years of age, in normal health and apt for matrimony. It seems to me unreasonable to believe, if the husband was normal as he contends he was, that he would have constantly *Page 449 
lived with his wife for a greater part of ten months without consummation of the marriage had he really desired it.
Tompkins v. Tompkins, supra. This was for an annulment on the ground of impotency. Defendant, as here, claimed that the marriage had not been consummated because of the refusal on the part of the wife. It was held that the conflict of testimony would be resolved in favor of the wife because there was no consummation after five years of cohabitation and that under the rule of triennial cohabitation, impotency would be presumed. The court says "the husband's plea" (that he refrained from intercourse at the wife's request) "does not inspire confidence." "Common experience discredits it and if in fact he had the sexual power and refrained from sexual intercourse during the five years he occupied the same bed with his wife, purely out of sympathy for her feelings, he deserves to be doubted for not having asserted his rights, even though she balked."
The period in the present case was of course much shorter but I believe a similar presumption can be drawn.
It seems remarkable that a strong healthy man, thirty-one years of age, who as he says himself had been for several years prior to his marriage indulging in sexual intercourse with other women and who as he asserts was perfectly normal, would have lived with a normal, healthy wife all these months without any consummation of the marriage simply because she did not wish it. Such condition is conceivable but not very probable.
As has been stated, from the very nature of the case direct corroboration cannot be expected, but this is not necessary since it may be furnished by surrounding circumstances adequately established. See Bissell v. Bissell, 93 N.J. Eq. 537, and cases therein cited.
Such corroboration of the complainant's testimony seems to me to be found in the evidence of the doctors who examined her from time to time during the cohabitation of the parties. These doctors all found that she was a virgin, was perfectly normal sexually, a strong healthy woman and with no discoverable impediment to intercourse. One of the doctors *Page 450 
testified that some months after the marriage she was in a very nervous and rundown condition; that he examined her to discover the cause of her condition, and finally finding no other reason for her state questioned her and obtained from her a statement as to her marital relations. One of the other doctors testified that practices upon her by her husband such as she testified to would fully account for her condition. One of the doctors told her that she must leave her husband for the time being. Another doctor testified that on his examination he found no evidences of a mental shrinking from intercourse which sometimes brings about involuntary hysterical contractions of the parts which might prevent consummation. I consider it a fair inference, taking together all the testimony of the doctors who examined her, that she not only was capable physically of intercourse but that there was no unwillingness on her part; that the deprivation of normal intercourse was the cause of her nervous breakdown, and that it would be unsafe for her to continue to live with defendant under such conditions.
I am of the opinion that complainant was fully justified in leaving the defendant and is entitled to separate maintenance. Since the separation was justified the desertion charge in the counter-claim must be dismissed. Question of the amount to be allowed for maintenance will be referred to a special master. A decree will be advised accordingly. *Page 451