150 A.2d 833 (1959)
HELEN, Plaintiff,
v.
THOMAS, Defendant.
Superior Court of Delaware, New Castle.
April 16, 1959.
*834 Bayard W. Allmond (of Allmond & Wood), of Wilmington, for plaintiff.
Robert B. Walls, Jr., of Wilmington, for defendant.
STIFTEL, Judge.
This is the decision on plaintiff wife's petition for annulment on the ground that her husband was incurably physically impotent within the meaning of 13 Del.Code, § 1551.
Plaintiff was married to defendant on October 18, 1957, in New Castle County. After the marriage, defendant was unable to have sex relations with his wife. In order to remedy this condition, defendant sought medical advice and assistance. Dr. Henri F. Wendel testified that defendant had a normal sperm count and that he could see nothing abnormal about his organs. Dr. Harry J. Repman, a urologist, stated that he had examined the defendant on three occasions beginning on February 3, 1958, and that he appeared anatomically normal insofar as his sex organs were concerned. It is agreed that there were no physical signs of disease apparent that could be considered the cause of defendant's inability to perform the sexual act. Dr. Repman learned from defendant that he had a past record of sexual abnormality, and thought that this history might have some bearing on his inability to perform the sexual act. He therefore recommended psychiatry.
Dr. Albert L. Ingram, Jr., a psychiatrist, classed the defendant as a "pure form" sexual deviate. The psychiatrist testified that in his opinion the defendant probably could be "classed as impotent and physically incurably impotent" on the date of his marriage, and that he was unable to copulate.
Plaintiff argues that she is entitled to an annulment on the basis of the testimony of the psychiatrist, Dr. Ingram.
Defendant disagrees by saying that Dr. Ingram did not testify that defendant was incurable, and even if Dr. Ingram's testimony can be interpreted to mean that the defendant's condition is incurable, the statute is limited to granting an annulment for incurable physical impotency and this does not mean incurable "psychological" or "psychical" impotency.
13 Del.Code Ann. § 1551(1) provides:
"A marriage may be annulled for * * * (1) Incurable physical impotency, or incapacity for copulation, at the suit of either party; if the party making the application was ignorant of such impotency or incapacity at the time of the marriage."
Plaintiff has the burden, in this action, to show that an incurable physical impotency or incapacity for copulation existed at the time of the marriage.
Plaintiff argues that the statute is written in the alternative and that plaintiff may prove either "incapacity for copulation" or "incurable physical impotency". In S. v. S., 3 Terry 192, 29 A.2d 325, the Court rejected this argument and explained that the words "incapacity for copulation" are merely explanatory of the word "impotent", and that "impotent" means irremedial physical incapacity (incurable physical impotency).
Nevertheless, I believe that under our statute an annulment may be granted based on psychogenic causes, where such mental block or disturbance has the result of making the spouse physically incapable of performing the marriage act.
In Tompkins v. Tompkins, 92 N.J.Eq. 113, 111 A. 599, where the statute required the wife to prove her husband was physically and incurably impotent, physicians testified that the husband appeared to be normal physically yet was unable to perform the marriage act. A divorce was granted on the "doctrine of triennial cohabitation", and in the process of arriving at its decision, the Court stated (111 A. at page 600):

*835 "If there is genital impairment, it is latent and scientifically undiscoverable; or the lapse may be due to a psychosis, well recognized by the medical science, and discussed in some of the divorce cases in England  a mental condition rendering him physically impotent as to his wife, though potent as to all other women * * *".
And in Godfrey v. Shatwell, 38 N.J.Super. 501, 119 A.2d 479, the New Jersey Court, operating under a statute which required the existence of "physical and incurable impotency at the time of the marriage", stated (119 A.2d at page 482):
"Impotence of either spouse in relation to the other may be either physical or psychical in origin [citing authority]. The condition may be curable, incurable, accidental or temporary [citing authority]. Where psychological in origin the condition may be quoad hanc, i. e., as to the spouse only."
In Kaufman v. Kaufman, 82 U.S.App.D. C. 397, 164 F.2d 519, at page 520, the Court stated:
"The courts have long recognized the fact that impotence is frequently the result of psychogenic causes. Indeed one medical authority states that most cases of impotence seen by urologists are of the psychic type rather than the result of physical defects. The same authority says that in some such cases individuals who have imagined and convinced themselves that they are impotent may by the force of such mental conviction be unable to perform the sexual act although in reality nothing but their state of mind prevents them from doing so."
See, also, Vanden Berg v. Vanden Berg, Sup., 197 N.Y.S. 641.
I conclude that our statute permits an annulment where it is shown by the evidence that there are psychic causes which produce "incurable physical impotency".
Did the plaintiff prove the condition of the defendant was incurable? Although Dr. Ingram's testimony was not absolute in this respect, I believe it was as positive as a psychiatrist can be under the circumstances in this age of scientific achievement. The essence of his testimony is that the defendant should probably be classed as a physically incurable impotent, with the understanding, however, that while there is life, there is hope, and that from a doctor's viewpoint, no disease can be considered completely incurable.
Defendant next argues that his wife was not ignorant of his impotency or incapacity at the time of the marriage because she had knowledge of his background and had a duty to inquire. There is no evidence in the record which demonstrates that plaintiff had any knowledge of defendant's impotency prior to marriage; nor is there evidence from which the court can conclude that plaintiff had knowledge of facts sufficient to put her on guard. Annotations: 15 A.L.R. 2d 670 (antenuptial knowledge relating to alleged grounds as barring right to divorce), 15 A.L.R.2d 706 (antenuptial knowledge relating to alleged grounds as barring right to annulment).
An annulment decree will be entered and plaintiff will be allowed to resume the name she had prior to her marriage. There will be a separate hearing settling the right, title and interest in certain real estate presently in the names of both parties.