91 N.J. Super. 562 (1966)
221 A.2d 763
D, OTHERWISE C, PLAINTIFF,
v.
C, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 29, 1966.
Mr. Morris M. Schnitzer for plaintiff (Messrs. Kasen, Schnitzer & Kasen, attorneys).
Mr. Arnold K. Mytelka for defendant (Messrs. Clapp & Eisenberg, attorneys).
*563 McALEVY, J.S.C.
The question presented here is whether the plaintiff, an impotent wife, may successfully maintain an annulment action based on her impotence. This is a matter of novel impression in New Jersey.
The defendant, through his attorney, submitted generally to the jurisdiction of this court, but did not contest or appear at the time of the hearing.
After previous litigation between the parties, plaintiff filed a complaint for annulment on the ground that at the time of the marriage to the defendant she was physically and incurably impotent to consummate the marriage because she suffered from vaginismus, or some other disability with respect to the defendant, and that she was ignorant of such impotence at the time of the marriage, and that she has not subsequently ratified said marriage.
Plaintiff testified that at the time of the marriage she did not know of any reason why the marriage could not be consummated; that she realized there could be no consummation when the honeymoon ended; that the parties never succeeded in having sexual relations and have not attempted such relations since; that the marriage was never ratified; that on her return from her honeymoon she was examined by several doctors.
Dr. Mario V. Pizzi, a specialist in gynecology, testified he examined plaintiff on October 23, 1961, immediately after the honeymoon ended and found her to be a virgin, and that there were no physical obstacles in the plaintiff to the consummation of the marriage and that she was normal organically and anatomically. He further found there was no penetration.
Dr. Henry A. Davidson, a well-known psychiatrist practicing that specialty for 36 years, testified he examined the plaintiff on May 5, 1966 and found plaintiff suffered from vaginismus, "an emotional or mental disorder," which he described as "a spasm of the circular muscles around the vagina which under emotion tighten up becoming really rather rigid and the inability to relax them." He further testified that this condition is "involuntary" and that "it is incurable in reference *564 to this man," and that "there wouldn't be any medical method of treating it surgically."
Godfrey v. Shatwell, 38 N.J. Super. 501, at pp. 506-507 (Ch. Div. 1955), states:
"Impotence of either spouse in relation to the other may be either physical or psychical in origin. Herzog, Medical Jurisprudence (1931), § 1184, p. 816. * * * Where psychological in origin the condition may be quoad hanc, i.e., as to the spouse only. See Tompkins v. Tompkins, 92 N.J. Eq. 113, 114 (Ch. 1920); Grobart v. Grobart, 107 N.J. Eq. 446, 447 (Ch. 1931), affirmed 109 N.J. Eq. 129 (E. & A. 1931)."
N.J.S. 2A:34-1 reads as follows:
"Judgment of nullity of marriage may be rendered in all cases when:
* * * c. The parties, or either of them, were at the time of the marriage physically and incurably impotent, provided the party making the application shall have been ignorant of such impotency or incapability at the time of the marriage, and has not subsequently ratified the marriage."
The statute does not preclude an impotent party from maintaining such action as long as he or she fulfills the other requirements of the statute. 12 N.J. Practice (Herr-Lodge, Marriage, Divorce & Separation), sec. 1424, p. 36 (1963).
The words, "The parties, or either of them," indicate that either the potent or the impotent party may bring the action so long as the other requirements of the statute are met. Likewise, if both were impotent, either party could maintain such action.
A careful search has failed to yield any American case law which disqualifies the impotent party from bringing such action merely because the plaintiff was the impotent or incapable party.
There are some dicta in the case of G. v. G., 67 N.J. Eq. 30 (Ch. 1904), to the effect that only the potent party could bring such an annulment action, but it is not clear whether the court meant that an impotent party could never successfully maintain an action for annulment or only in the instance *565 then before that court. In that case the parties lived together for a period of 20 years and the wife then separated herself and accepted support for ten more years. Thereafter the husband sued for divorce on the grounds of adultery, to which action the wife filed a cross-bill alleging impotency and extreme cruelty. The court in its opinion (at p. 38) in a one-sentence reference said that the marriage "could only be annulled for impotence at her option and on her application." However, there was no necessity for such statement because that part of the case was decided on the theory that there was a disqualification on the failure to meet the statutory condition requiring a demonstration of no ratification as distinguished from the husband's disability.
In Anonymous v. Anonymous, 69 Misc. 489, 126 N.Y.S. 149 (Sup. Ct. 1910), the court, on facts similar to those in the present case, construed New York's statute as permitting the impotent party to bring the annulment action.
The canon law, upon which our present law of annulment is based, would allow the impotent party to bring the action. Code of Canon Law, Canon 1068.
In Thiesmeier v. Thiesmeier, 124 N.J. Eq. 116 (Ch. 1938), the husband counterclaimed to his wife's divorce action for an annulment based on his own impotency. The court, in considering whether the wife should be allowed to amend her complaint to include counts for annulment based on her husband's impotency did not criticize the propriety of the husband's counterclaim. It said:
"The remedy following the establishment of the cause of action in the petition, of the cause of action in the counter-claim, or of any of the causes of action proposed by the petition for amendment, would be a decree terminating the marriage relation of the parties." (at p. 119; emphasis added)
The public interest in dissolving a mock marriage is the same whichever of the parties is incapable.
An annulment is not punishment for a wrongdoing, and certainly the impotent party is not a wrongdoer. Neither *566 party is at fault, and therefore either should have the same right to dissolve the marriage under the circumstances here presented.
I am satisfied from the testimony that D., otherwise C., at the time of her marriage was physically and incurably impotent with reference to the defendant; that she was ignorant of such impotency at the time of her marriage, and that there was no ratification of the marriage.
Judgment of annulment granted.