## BASCOMB *v.* BASCOMB.

Impotency, arising after marriage, is not a cause of divorce within the meaning of § 3, chap. 148 of the Revised Statutes.

*Semble*, that impotency, in order to constitute a proper ground of divorce, must be incurable.

Bascomb v. Bascomb.

LIBEL FOR DIVORCE. It was alleged in the libel that the parties were married on the fifth day of September, A. D. 1837, at Palmer, in the county of Hampden, in the Commonwealth of Massachusetts, and that they resided and lived together, the principal part of the time in Massachusetts, until the month of June, A. D. 1844, when the parties removed to Jaffrey, in this State, where they have ever since resided, excepting that the libellee has been occasionally absent from the State, for the purpose of medical treatment. It was further alleged, that without the fault of the petitioner, the libellee, on the first day of February, A. D. 1847, fell into a state of impotency, and then became, and had ever since been and still continued to be, impotent, diseased, disabled, deranged and insane; and by reason thereof had been, and still continued to be, insane and impotent, and unfit and disabled from rendering to the petitioner any solace or comfort as his wife or otherwise.

The evidence offered in support of the allegations of the libel tended to prove that the infirmity complained of was of a permanent and incurable character. The facts detailed in the evidence, so far as the same are essential to a full understanding of the case, are sufficiently stated in the opinion. The alleged impotency of the libellee was the cause of divorce relied upon, and not the other causes set forth in the petition.

*Wheeler* and *Faulkner*, for the libellant.

The libellant filed his petition for a divorce, alleging as the cause the impotency of the libellee. There are other allegations in the libel, but it is conceded that impotency is the substantive charge. It is believed that the proof establishes beyond question the fact of impotency, and also hopeless idiocy,—arising, however, since the marriage, and without the fault of the wife. The question, then, is whether the court is authorized to grant a divorce on the facts which exist in this case.

Bascomb *v.* Bascomb.

But little light can be derived from the English authorities, for the reason that the whole subject of divorce is with us a matter of statute regulation, and rests upon different principles from those reconized at common law. At the common law, divorces *a vinculo matrimonii* were granted only for causes existing prior to the marriage, and the marriage was thereby rendered void *ab initio.* *Wait* v. *Wait,* 4 Comstock 95; 1 Black. Com. 440. No question of this kind could, of course, arise under that branch of the law of divorce. The divorce or separation *a mensa et thoro* is unknown to the laws of this State. This case is, therefore, to be determined by a fair interpretation of the language of the statute.

The language of the Revised Statutes, chap. 148, § 3, is clear and intelligible, and would hardly seem to admit of a question. Impotency is declared to be a cause of divorce, without qualification or reference to its existence before marriage. And it is to be observed that the statute makes no distinction between this and the other causes of divorce, as to time. All are enumerated in the same connection, and in the same general phraseology; and they are such as arise after marriage. Extreme cruelty, habitual drunkenness, or adultery, would hardly furnish grounds of divorce under any circumstances, unless subsequent to the marriage; and divorces are granted without question, where the wrong was done after marriage. There seems to be no good ground for excepting impotency, and making a distinction where the statute has made none. The consequence to the parties is substantially the same, whether the cause arise before or after marriage.

The object of a divorce is not to punish either party, or to annul a contract, for the reason that it was fraudulent; for the common law did not distinguish between the case where the party was aware of the impotency, and where it was unknown at the time the marriage was contracted.

And in this State, except in the case of adultery, the

cause must be in existence at the time of the filing of the libel. Revised Statutes, chap. 148, § 5.

*Vose*, for the libellee.

None of the causes alleged in this libel furnish, as we conceive, any ground for divorce, unless it be the cause of "impotency."

This term, as defined by Webster, would seem to be only properly applicable to males.

By the English law, as existing at the time of the adoption of our constitution, in 1784, impotency was not a ground for divorce or nullity, unless it existed at the time of the marriage. 2 Black. Com. 440; 2 Kent's Com. 81.

Prior to the adoption of our constitution, divorces were only granted here by the Legislature. *Clark* v. *Clark*, 10 N. H. Rep. 384.

The legal meaning attached to the term "impotency," as applicable to the relation of husband and wife, was, at the time it was introduced into our earliest acts on the subject, an inability for procreation at the time of the marriage.

It is evident that this general term, as used in our statutes, must be restricted to some extent at least. Women, at a certain stage of their lives, become incapable of procreation by a natural law, and from thenceforward are impotent to produce children; yet it will hardly be contended that this species of impotency is a ground of divorce.

In this case, the impotency, such as it is, was the result of accident and disease, after the purpose of the marriage had been answered by the production of four children, and is not, as we contend, of a kind contemplated by the statute to furnish ground of divorce.

The libel, in this case, contains no allegation that the impotency and diseases alleged to exist, are of a permanent and incurable nature.

WOODS, J. This case is a libel for divorce. The ground

of complaint is corporal impotency, arising several years after the intermarriage of the parties.

Chapter 148, § 3 of the Revised Statutes provides that "A divorce from the bond of matrimony shall be decreed for the following causes, in favor of the innocent party; for impotency," &c., &c.

Section 5 provides that "no divorce shall be granted for any cause except adultery, unless such cause shall be in existence at the time of filing the petition for such divorce."

It does not become necessary to determine whether the character of the infirmity is such as to constitute impotency, within the meaning attached to that word in the law, as the same has been applied to cases where divorces have been sought for that cause.

In all cases of impotency, in order that it should constitute a proper ground of divorce, it is necessary that it should be incurable. It has been holden that where the infirmity is curable, or where the obstruction complained of is capable of removal, by a slight surgical operation, or by other appropriate remedies, endangering neither life nor health, the cause is wholly insufficient. The cause of the present complaint is impotency, arising from the rupture of the neck of the womb in child-birth, the effect of which would be, as the medical witnesses testify, " to destroy the natural physiological action of the organs diseased;" and that such has been the result in the present case. It is stated in the evidence, also, that if the disease were removed, there is no reason to suppose that the organs would not recover their usual power. Dr. Phelps thinks that for three reasons, specifically assigned by him, the disease is incurable, namely, its extent, its time and habit of continuance, and the failure of appropriate and established modes of treatment to accomplish the purpose. Dr. James Batchelder thinks that the prospect for the recovery of the libellee is almost hopeless.

The opinion of the surgeons is, that sexual intercourse

would be attended with extreme pain on her part, and that any attempt of the kind would be highly improper.

Whether the infirmity be shown to be so probably incurable, or whether the infirmity is, in other respects, shown to be of a character to warrant a divorce, the court do not find it necessary now to decide.

The alleged cause of divorce arose after the intermarriage of the parties. The main question that arises is, whether for that reason the impotency, if such it be, furnishes the cause contemplated by the statute.

The alleged cause arose not only after the marriage, but as a consequence of it. From the evidence in the case, it seems to be a result not unfrequently arising from the same cause. It would seem to be the result not of the neglect, but of the performance of duty. It is no fault of the libellee, that she has fallen into her present condition, but is a consequence of the appropriate discharge of her marital duties. If it should be found to be the cause contemplated by the statute, it would seem to stand upon other principles than those which lie at the foundation of the other causes. The other causes all plainly rest upon some wrongful act or neglect of duty, on the part of the party against whom the proceeding will lie. Of this character is desertion, habitual intemperance, adultery, &c.

The statute does not, in terms, declare at what period the impotency must be proved to exist; whether it must be shown to exist at the date of the marriage, or may arise at a subsequent period. The language of the act is, that " a divorce from the bond of matrimony shall be decreed for the following causes, in favor of the innocent party," and then proceeds to enumerate the causes, and among others is " impotency." The language thus used, providing for the decree of divorce " in favor of the innocent party," would seem, in some degree, to indicate the sense of the Legislature upon this subject. From the language of the act, and the nature of the causes prescribed generally therein, it would

hardly seem that a person entirely faultless, one who had in all particulars conformed her conduct to her duties and proper relations in life, is the party upon whom the law intended to visit the severe penalty of a divorce. No other of the causes enumerated in the statute is of the character supposed; but every one of them implies, and is wholly and manifestly based upon, the positive wrongful act or neglect of duty on the part of the party complained of. Each and every of the other causes is a palpable and flagrant violation of the duties and proprieties of life, growing out of the marriage relation. We are of the opinion, however, that the facts in this case cannot be regarded as furnishing the cause which the statute intends.

The corporal infirmity must exist at the time of the marriage, in order to constitute the cause of impotency intended by the statute. Its existence at that time may well be regarded as a fault, in the nature of a fraud, and may thus be justly and properly redressed, by the only adequate remedy of a decree of divorce.

When the legislature enacted the cause under consideration, we do not think they intended to adopt a different principle from that which had been recognized in England, and perhaps we may safely say, in all other christian countries, as establishing a just foundation for a dissolution of the bond of matrimony, and for the sundering of the most important relation in life. And it is believed that neither in England nor in this country is a case to be found in any degree countenancing the idea of the right or power of any court to decree a divorce under circumstances like those under consideration, although impotency is, and long has been, a cause in England, and has also been made such in some, if not all the States of this Union, by positive enactments by their respective legislatures.

Mr. Dane, in his abridgment, lays down the rule in general terms, that impotency, to be a ground of divorce, must

exist at the time of the marriage.    Dane's Ab. chap. 46, art. 1 § 3.

Mr. Chancellor Kent says, the canonical disabilities, such as consanguinity, affinity, and corporal infirmity, arising prior to the marriage, render it voidable only. · 2 Kent's Comm. 81.

In Connecticut, corporal imbecility has been adjudged sufficient to dissolve a marriage, on the ground of fraud. 1 Day's Rep. 111 ; 2 Kent's Comm. 81.

In New York, in 1825, it was decided in their court of chancery, that that court could not dissolve a marriage, or decree a divorce, for the cause of corporal impotency.   It was said in that case, that the law of England, concerning divorces, is chiefly the ecclesiastical, and not the common law of that country, and that it had never been adopted in New York.   It was further said, that their statutes, concerning divorces, are original regulations, and do not adopt or introduce the English law.   It was further averred in that case, that there was, in that State, no court authorized to adjudge a marriage illegal, and to separate the parties.  *Burtis* v. *Burtis*, Hopkins' Rep. 557.

In *Devanbagh* v. *Devanbagh*, which arose after the case in Hopkins, and is reported in 5 Paige's Rep. 554, it was decided, that to authorize a sentence of nullity for the cause of impotency, the physical incapacity of the defendant must have existed at the time of the marriage, and must be incurable, and both these facts must be established by the most satisfactory evidence, although they are admitted by the defendant.   The opinion in that case was delivered by Mr. Chancellor Walworth.   He remarks, that "by the English law, as it existed at the first settlement of this country, and as it now exists, to authorize a sentence of nullity on the ground of impotency, it is necessary for the complainant to establish the fact of the existence of the alleged incapacity, at the time of the marriage, and that such in-

capacity still continued." Reference is made to 1 Chitty Med. Jurisp. 375, and many other authorities.

The learned chancellor further says, that "this also appears to be the law of France, Spain and Holland, and it is probably the law of Europe generally." 1 Beck's Med. Jurisp. (5th ed.) 68, and divers other authorities are referred to.

"And such (says he) is the construction which I feel bound to put upon the statute of this State, authorizing this court to decree a nullity of the marriage contract, on account of the physical incapacity of the defendant to consummate the marriage."

The doctrine of the last case referred to in 5 Paige's Rep. is recognized by the chancellor in the case between the same parties, reported in 6 Paige's Rep. 176, decided in 1837.

Sir William Blackstone says that the canonical disabilities are pre-contracts, consanguinity, or relation by blood, affinity, or relation by marriage, or some particular corporal infirmities. 1 Black. Comm. 434.

He further says, that "the total divorce, *a vinculo matrimonii*, must be for some of the canonical causes of impediment, before mentioned, and those existing before marriage, as is always the case in consanguinity, not supervenient, or arising afterwards, as may be the case in affinity or corporal infirmity." 1 Black. Comm. 440. In a note to the above, Mr. Christian says: "Corporal imbecility may arise after marriage, which will not then vacate the marriage, because there was no fraud in the original contract, and one of the ends of marriage, viz: the legitimate procreation of children, may have been answered."

We do not understand Blackstone as intending to declare that physical incapacity, which may, and often does, arise after marriage, or may be "supervenient," as he phrases it, will in such case have the effect in England to vacate the contract of marriage, and Mr. Christian denies the position

altogether, which can be attributed to Blackstone at most only by implication.

In *Ferris* v. *Ferris*, 8 Conn. Rep. 166, it was decided that in order to sustain a petition for a divorce by the wife, on the ground of corporal imbecility in the husband, it is necessary to show a permanent and incurable impotency to consummate the marriage. The averment in the petition in that case was, " that at the time of their intermarriage, the said defendant was, and ever since has been, and now is, laboring under a corporal imbecility."

The case of *Ferris* v. *Ferris* was then, palpably, a case in which the cause relied upon was a cause existing at the date of the marriage, and that case may also well be regarded as recognizing the principle, that it is requisite that such should be the state of the fact in order to vacate the marriage contract. And beyond the inference to be made from the averment as to the time of the imbecility, in the petition, the court, in delivering their judgment, plainly recognize the doctrine already cited, as contained in Christian's note to Blackstone's Commentaries.

In *Norton* v. *Norton*, 2 Aik. Vt. Rep. 188, the case was a petition for a bill of divorce. The cause alleged was impotency. The proof was that the petitionee, by reason of fits and other causes, had become an incurable idiot, wholly incapable of the duties, and insensible to the endearments of life. The court, upon consideration, said they had examined the case, and were satisfied they could not aid the petitioner, and the petition was ordered to be dismissed.

It sufficiently appears by the last case, which is thus briefly reported, to warrant the conclusion that the ground upon which the opinion of the court rested, was the fact, that the impotency had arisen since the intermarriage. The abstract of the case is that " impotency, arising from idiocy, is no cause for divorce." This nearly precludes the idea that the cause existed at the time of the marriage, for it can hardly be supposed that the party was an idiot when married.

And we infer that the case in Vermont was one depending upon the proper construction of the statute of that State, relating to divorces, although it is not so stated in the case.

Whether the case of *Ferris* v. *Ferris*, referred to as decided in Connecticut, depended upon the construction of the provisions of a statute of that State, or upon the law of England, as adopted there, does not appear from the case, excepting so far as an inference may be made from the fact that, in the opinion, no reference is made to any statute, but reference is made to Blackstone's Commentaries and Christian's Note. But however that may have been, it is clearly assumed by the allegations in the petition, as well as the language of the opinion, that the infirmity must, in that State, exist at the date of the marriage, in order to constitute a ground for the decree of nullity of marriage. The libel expressly alleges the existence of the infirmity at the date of the marriage, and in the opinion, is propounded the following inquiry : " Does the term corporal infirmity, as here used, *ex vi termini*, import a confirmed and incurable impotency to consummate the marriage ?" And we have seen that a similar doctrine was asserted in the case in 1 Day's Rep. 111, as cited by Mr. Chancellor Kent, and before referred to.

And in New York the law is seen to be the same. There it is held to be the law upon the fair and reasonable interpretation of the statute making impotency a cause of divorce, but without in express terms requiring that it should exist at the date of the marriage. The authority for this construction is claimed upon the ground of its analogy to the law upon this subject, as found to exist in England, France, Spain, Germany, and Europe generally, (5 Paige's Rep. 554, and 6 Paige's Rep. 175, before cited,) as well as the reasonableness of the construction itself, when considered in reference to the subject matter of it, and the object to be obtained by it. It was intended to furnish the means

of relief against a mere imposition in the nature of a fraud. 1 Day's Rep. 111.

The doctrine upon this subject, as far as it has come under our notice, and as far as we are able to learn, is uniform, both in England and in other portions of Europe, and in this country.

In view of this state of the law, as found to exist elsewhere, in the enlightened tribunals in other jurisdictions, and which is commented upon and approved by learned commentators, whose mere approval carries weight, and adds force and gives confidence in the correctness and propriety of the judgments establishing the law itself, we are called upon to give a construction to a provision of our statute upon the same subject. Fortified as we are by the authorities referred to, and the views suggested, we feel no hesitancy in holding that in this State, impotency, in order to furnish a ground of divorce, must exist at the time of the marriage. The right to relief rests upon the ground of imposition and fraud ; and, as we think, the statute was not intended to reach the case, or to furnish relief where the cause was the mere result of the proper discharge of duty, as in this case—a mere misfortune, in no sense brought about by the fault of the party, from whom the divorce is sought to be obtained.

*Libel dismissed.*