ROBERT J. WHITEHOUSE *vs.* EDWINA M. K. WHITEHOUSE.

Cumberland.     Opinion March 7, 1930.

*Frank H. Purington*, for petitioner.
*Hinckley, Hinckley & Shesong*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

BARNES, J. This action is on a libel filed for the annulment of marriage, brought under authorization of Sec. 15, Chap. 65, R. S. of Me.

The allegation is in brief that on November 2, 1928, libelant entered into the contract of marriage, on representation by libelee that she was then pregnant by him, and that this representation was false and fraudulent.

At the time of marriage libelant was about eighteen years of age and libelee about seventeen.

The libelant having had sexual intercourse with libelee prior to her representation of pregnancy, we may conclude that he believed her condition to be what she said it was.

Sixteen days after marriage he observed what the libelee considered the usual menstrual discharge or the result of a miscarriage, and continued to cohabit with her until April tenth, when, after a quarrel, he left her; the next week filing this libel to have the marriage contract decreed null and void *ab initio* because of fraud in its procurement on the part of the libelee.

It is not true that every kind and degree of fraud which would be sufficient to annul an ordinary contract would also be sufficient to annul a marriage. *Franke* v. *Franke* (Cal.), 31 Pac., 371; *Lyon* v. *Lyon*, 230 Ill., 366, 82 N. E., 850; *Browning* v. *Browning*, 89 Kan., 98, 130 Pac., 852.

Marriage in the legal sense, is a personal relation arising out of a civil contract, to which the consent of parties capable of making that contract is necessary.

It is "an institution founded upon mutual consent. That consent is a contract, but it is one *sui generis.* Its peculiarities are very marked. It supersedes all other contracts between the parties, and with certain exceptions it is inconsistent with the power to make any new ones. It may be entered into by persons under the age of lawful majority. It can be neither cancelled nor altered at the will of the parties upon any new consideration.

"The public will and policy controls their will. . . . Perhaps the only element of a contract, in the ordinary acceptation of the

term, that exists is that the consent of the parties is necessary to create the relation. It is the most important transaction of life. The happiness of those who assume its ties usually depends upon it more than upon anything else.

"An eminent writer has said, 'it is the basis of the entire fabric of all civilized society.' " *Ransall* v. *Kreiger*, 23 Wall., 137, 147.

"Marriage is a civil contract, But immediately upon its consummation it automatically takes a status or relation which carries duties and responsibility over which the parties have no control, and concerning which the state is interested." *Robertson* v. *Roth* (Minn.), 204 N. W., 329, 39 A. L. R., 1342.

In some states provision is made by statute for annulment of marriage, with the exception of cases where the complaining spouse, with full knowledge of the facts constituting fraud, freely cohabited with the other as husband and wife.

In the absence of any statute on the effect of cohabitation after discovery of the practised fraud, we have recourse to the rules of equity, for annulment is a proceeding in equity on the theory that the marriage was void *ab initio*. 9 R. C. L., 267, Sec. 26.

In such consideration we have the assistance of courts which have maturely considered the point in issue.

"If either party to a marriage contract (were disqualified at the time of making the contract) then the contract would be void *ab initio*. So if the marriage were effected by fraud or duress, and was *never afterwards ratified voluntarily*, by a mind having the proper capacity, and also free at the time of ratification to act without fraud or force, then the same results might follow.

"But the authorities are numerous and uniform and entirely conclusive upon the point, that such marriages may be good at the election of the injured party, who, on being set free from the influence of the fraud or duress, may then give a voluntary consent — may ratify and confirm the contract.

"The injured party may, if he choose, waive the objection, and thereby render the marriage good. And it has been held that a voluntary cohabitation, after full knowledge of the fraud, and after the force, or the cause of fear is removed, will cure the defect." *Hampstead* v. *Plaistow*, 49 N. H., 84, 98.

Where a man was constrained to marry because of fear of bodily harm, and consummated the marriage by cohabitation until the morning of the second day, there was found to be ratification of the marriage and annulment was refused. *Boutterie* v. *Demarest*, 126 La., 278, 52 So., 492.

"Undoubtedly a voluntary consummation is usually such a ratification as cures the defect of lack of consent in the original contract.

"When the effect of the fraud, error or duress has been removed from the mind enthralled, the party has the election to affirm or not, the marriage.

"It is affirmed, for example, by a voluntary continuance of the cohabitation with full knowledge of the invalidating facts. Where the mind is overcome by fraud, by error, or by duress, so that in fact, it does not consent to an apparent marriage, the law will deem it no marriage, though if, after the thrall is broken, it then fully consents, no repetition of the ceremony is required to make it good." *Avakian* v. *Avakian*, 69 N. J. Eq., 89, 60 Atl., 521.

When the consent of either party was obtained by force, the marriage may not be annulled, where such party afterwards freely cohabits with the other as husband and wife. (In this case not over four days.) *Linebaugh* v. *Linebaugh*, 137 Calif., 26, 65 Pac., 616.

A man was arrested on a charge of having seduced a woman under promise of marriage, and in company with the officer went to the county seat, procured a marriage license, and in the presence of her brother's family, some of their neighbors and the arresting officer, married the woman. Their child was then three days old.

About a month after the marriage, and after having carefully nursed his wife back to health, the husband permanently abandoned wife and child. His conduct was held to support a finding that he ratified the marriage, though the same was entered into under duress. *Merrill et al* v. *Moore et al*, 47 Tex. Civ. App., 200, 104 S. W., 514.

"But the husband will not be entitled to an annulment of the marriage on grounds of antenuptial pregnancy by another man, if after the discovery of this condition, he has condoned it by continuing to cohabit with her." *Lenoir* v. *Lenoir*, 24 App. D. C., 160, 13 L. R. A. (N. S.), 997.

"It is settled, also, that the husband will not be entitled to a decree for the annulment of the marriage on the ground of fraud in concealing pregnancy, if, after its discovery by him, he condones it by continuing to cohabit with his wife." Ann. Cas., 1914C Note, P. 1294. *Alexander* v. *Alexander*, 36 App. Cas. (D. C.), 78; *Steele* v. *Steele*, 96 Ky., 382, 29 S. W., 17; *Montgomery* v. *Montgomery*, 3 Barb. (Ch.), N. Y., 132; *Shrady* v. *Logan*, 17 Misc. (N. Y.), 329; 40 N. Y. S., 1010; *Bryant* v. *Bryant*, 171 N. C., 746, 88 S. E., 147, L. R. A., 1916E, 648.

With the rulings of the courts cited we find ourselves in accord, and hold that a husband who was guilty of illicit sexual relations with a woman before marriage, can not, after marriage and more than four months' cohabitation with her, in equity and good conscience put her from him by annulment, even if she induced the marriage through fraud.

In the case at bar it was further found by the Justice below "that when the libelee stated to the libellant that she was pregnant, she believed the statement to be true and had reason so to believe. The testimony as to the pregnancy of the libelee is not sufficient to establish the fact that she made a false statement, and I therefore find that she did not make a false statement."

A careful study of the evidence fails to convince us of any error below.

*Decree confirmed.*