38 N.J. Super. 501 (1955)
119 A.2d 479
LAWRENCE R. GODFREY, PLAINTIFF,
v.
PHYLLIS S. SHATWELL, OTHERWISE PHYLLIS S. GODFREY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 20, 1955.
*503 Mr. Ward Kremer for plaintiff.
Mr. Thomas D. Nary for defendant.
CONFORD, J.A.D. (temporarily assigned).
Plaintiff brought this action to secure an annulment of a ceremonial marriage of the parties contracted February 3, 1954, on the ground of the physical and incurable impotence of the defendant. The complaint recites a fraudulent concealment of the fact from the plaintiff by the defendant. The parties cohabited until the latter part of May 1954 and the complaint in this action was filed July 19, 1954. Plaintiff's story is that there was not a single act of sexual intercourse between the parties; defendant's that there were frequent and regular matrimonial relations commencing the marriage night. I am satisfied from the proofs, to which I shall make reference, that both principals to this litigation have testified falsely. There were apparently attempts at sexual connection which were painful and difficult to the defendant and ultimately ceased. I have had to divine the facts from the testimony of a physician who examined and treated the defendant and *504 by reading between the lines of the untruthful testimony of the parties. The real problems presented are (1) as to whether the disability from which I conclude defendant was suffering is satisfactorily proven to have been one which constituted her "incurably impotent," and (2) whether plaintiff has not "ratified the marriage." N.J.S. 2A:34-1.
At the time of the marriage plaintiff was about 56 years of age and the defendant some 20 years younger. There had been a courtship of over a year. Both had had previous marriages. Defendant has children by her first husband, the youngest about 13 years of age.
Plaintiff's testimony was substantially to this effect. The night of the marriage the parties went to bed together between 2 A.M. and 3 A.M. after the wedding celebration in Asbury Park. They did not consummate their legal union by sexual relations because "it was too late." They were tired and wanted to make an early start in the morning for their honeymoon at the Hotel Taft in New York City. Their arrival later that day in New York was fortuitously concomitant with that of her menstrual period. That lasted seven or eight days and the honeymoon was not what plaintiff had hoped for. When they arrived home in Asbury Park she put off his solicitations of his marital due with the plea that she felt unwell, had pains "in her abdomen" and that he should "leave her alone." Subsequently she went to Dr. Maron "to see what's wrong with me" and told the plaintiff the doctor said she had internal cysts, that he "couldn't go near her" and that relief of her condition would require a serious operation some time. She left him March 31, 1954, leaving a note (conceded by defendant to be in her handwriting) to the effect that she was leaving because "we have no real marriage." On cross-examination plaintiff said that defendant returned to his home a week later, but only because she could not find an apartment. She stayed six or seven weeks, occupying a separate bedroom, and then left him permanently. There were never any marital relations. After she left he made strenuous efforts to induce her return, but to no avail. He was willing to continue the marriage in the *505 hope she might some day be able to perform her marital function. The doctor had told him she was sexually incapable but that an operation might possibly cure the condition.
Dr. Maron testified for the plaintiff. He has been a medical doctor eight years and is in general practice. He knew both of the parties prior to the marriage and had treated defendant for other ailments. She came to his office with the plaintiff for advice and treatment on three occasions within a little over a week, the first time on February 26, 1954. She told him that she had not had sexual relations with the plaintiff because of pain in her abdomen so severe as to require her to lie down. She was nervous and upset. At the first visit he prescribed only sedation. Several days later he performed a gynecological examination. He found the inner and outer vaginal muscles rigid and the vaginal opening "very contracted." There was obvious pain on palpation in the uterus and vagina. The condition was one which would not permit entry of "anything softer than a finger." He also found two small cysts on the cervix but he said they did not bear on the question of capability. His conclusion was that she was not then capable of sexual intercourse. He prescribed douches and advised abstention from intercourse. A week later he found the same condition and prescribed heavier sedation. She never returned thereafter.
Dr. Maron testified that there was no structural malformation but a condition arising from a combination of muscular and psychological factors. The muscular rigidity itself might be due to psychological influences. If the latter were removed the entire condition might be cured but it was his opinion it was unlikely that this would occur. He said there was also a possibility of relief by surgery or stretching. He gave it as his opinion that her incapacity was permanent "if the other factors remained the same." He did not make a psychological or psychiatric examination of the patient.
Defendant's testimony was to the effect that there was never any problem between the parties over sexual relations; *506 that there was consummation of the marriage the first night and, except for menstrual periods, regular marital intercourse thereafter, free of pain or difficulty, three or four times a week, until she left the plaintiff in May 1954. She says she went to Dr. Maron for treatment of a temperature and was told she had a "virus flu"; that there was a vaginal examination on the third visit but only because she had had a discharge; and that the doctor told her husband to refrain from intercourse with her "for a few days." She testified she left the plaintiff because they could not get along generally, had disputes over money, and he gave her no real companionship. She had no supporting witnesses.
Plaintiff contends that defendant's obviously perjurious testimony constitutes such unclean hands as should preclude any consideration of her defense to the action. Conceding the justification for the characterization of her testimony, the argument misconceives the function of the court in this kind of litigation. The public is a party to every matrimonial litigation and the vulnerability, nay, indeed, the absence, of a defense will not relieve the court of its own obligation to see to the strict satisfaction of every requisite before granting a judgment of divorce or annulment of marriage. Armour v. Armour, 138 N.J. Eq. 145, 158 (E. & A. 1946); Akrep v. Akrep, 1 N.J. 268, 270 (1949); Pisciotta v. Buccino, 22 N.J. Super. 114, 116, 117 (App. Div. 1952); Brown v. Brown, 34 N.J. Super. 261, 264 (Ch. Div. 1954). Plaintiff's burden in an annulment suit to adduce proofs which are "clear and convincing," Pisciotta v. Buccino, supra (22 N.J. Super., at page 117), is not lessened by the obvious falsification of the defense.
I am not satisfied that there is sufficiently clear and convincing proof that defendant's disability was incurable. The requirement is indispensable. Heller v. Heller, 116 N.J. Eq. 543, 545 (E. & A. 1934). Impotence is defined as want of power for copulation, id; Kirschbaum v. Kirschbaum, 92 N.J. Eq. 7, 13 (Ch. 1920). Impotence of either spouse in relation to the other may be either physical or psychical in origin. Herzog, Medical Jurisprudence *507 (1931), § 1184, p. 816. The condition may be curable, incurable, accidental or temporary. Heller v. Heller, supra (116 N.J. Eq., at p. 545). Where psychological in origin the condition may be quoad hanc, i.e., as to the spouse only. See Tompkins v. Tompkins, 92 N.J. Eq. 113, 114 (Ch. 1920); Grobart v. Grobart, 107 N.J. Eq. 446, 447 (Ch. 1931), affirmed 109 N.J. Eq. 129 (E. & A. 1931).
In the present case I am convinced that there were efforts in the early phase of the cohabitation at sexual relations but that they did not continue because of pain and difficulty on the part of the defendant. I do not credit plaintiff's story that there were no marital relations on the marriage night because "they were tired." In the classic phraseology of Vice-Chancellor Backes, "Few have the fortitude to resist the temptations of the honeymoon. * * * The husband's plea does not inspire confidence. Common experience discredits it." Tompkins v. Tompkins, supra (92 N.J. Eq., at page 116). My conclusion is fortified by the complaint of pain made to the doctor and his advice to the parties to refrain from sexual relations for the time being. Sexual intercourse which is so painful and difficult to a wife that it is discontinued by the parties is not the normal and wholesome marital relation which is envisaged by the entry into marriage. So long as it lasts the condition is one of impotence in the legal sense. Cf. Singer v. Singer, 9 N.J. Super. 397 (Ch. Div. 1950); Donati v. Church, 13 N.J. Super. 454, 456 (App. Div. 1951).
But the required showing is one not alone of impotence, but as well of incurability. It is very likely, if not certain, that plaintiff was once apt, having conceived and borne children. The incurability of a disease is usually thought of in terms of the general state of knowledge of the medical profession. Black's Law Dictionary (4th ed. 1951), p. 908. The treating physician conceded that there was a psychological involvement here and that the elimination of that factor might cure the condition. He had reached no conclusion as to the possibility of a cure in terms of a *508 psychological or psychiatric prognosis as he had made no such examination. I have noted that he also testified there was some possibility of relief of the condition by surgery or stretching. In that posture of the proofs, and having in mind the requirement of clear and convincing evidence as a basis for judicial dissolution of the marriage status, I am unable conscientiously to conclude that either the three and one-half months of frustrated cohabitation by the parties or the bare conclusion of permanence by the physician, under the circumstances, is satisfactorily probative of defendant's incurable impotency. In the Heller case, supra, it was held that a presumption of incurable impotency would not arise from the failure of a married couple to achieve consummation during a two-month period (116 N.J. Eq., at page 547). In Anonymous, 158 N.Y. Supp. 51 (not officially reported, Sup. Ct. 1916), after a full collation of the authorities, it is concluded that if a condition of impotence is curable with a slight operation without endangering life or health it will not be considered incurable, even if the affected spouse refuses the operation; per contra, if the operation will be dangerous and it is the only means of cure.
I am, moreover, convinced that the marriage has been ratified by the plaintiff with knowledge of the material facts. I find he was informed, in substance, of the condition of his wife in respect to sexual incapacity and as to the state of the prospects for her cure, and that he nevertheless cohabited with the defendant with the desire and intent to affirm his marital relationship. By his own admission he vigorously besought her return on both of the occasions when she assertedly left him, and he expressed his love and desire for her return to him as late as his appearance as a witness at the trial, explaining he was willing to take his chances on the eventual restoration of her wifely capacity. While these expressions are laudable, they evidence an unequivocal attitude of affirmation of the marriage, which, in effect, is a ratification thereof and precludes relief under the statute. Cf. Donati v. Church, supra; Kirschbaum v. Kirschbaum, supra. I do not mean to imply that mere *509 cohabitation after knowledge is necessarily ratification. Cohabitation for a reasonable time with the intent solely to ascertain if the impotence is incurable might be distinguishable. Cf. Singer v. Singer, supra (9 N.J. Super., at page 400); 11 New Jersey Practice (Herr, Marriage, Divorce and Separation) (2d ed. 1950), § 973, p. 276); A.B. v. C.B., 34 N.J. Eq. 43, 45 (Ch. 1881). But here the cohabitation appears to me to have been in unqualified and unconditional affirmance of the marriage. The shortness of the period does not necessarily preclude a finding of ratification where the other evidence is weighty. I am constrained to find that plaintiff filed this action to rid himself of the defendant after he was finally satisfied she did not intend to return, because she deserted him, not because she was incurably impotent.
Judgment will be entered for defendant. There will be no costs or counsel fees.