EDMUND E. RICKARDS, Defendant Below, Appellant, v. KATHRYN ROBERTS RICKARDS, Plaintiff Below, Appellee.

*(December 8, 1960.)*

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Robert B. Walls, Jr.,* for defendant below, appellant.

*Clement C. Wood* (of Allmond and Wood) for plaintiff below, appellee.

Supreme Court of the State of Delaware, No. 38, 1960.

WOLCOTT, J.:

This is an appeal by the husband from a judgment of the Superior Court of New Castle County granting an annulment of marriage at the suit of the wife, and ordering the conveyance of real estate held by entireties to the wife alone.

The action was based upon 13 *Del. C.* § 1551, which provides as one ground for annulment of marriages:

"Incurable physical impotency, or incapacity for copulation, at the suit of either party; if the party making the application was ignorant of such impotency or incapacity at the time of the marriage."

The appeal attacks both phases of the judgment—that is, the award of the annulment and the consequent order that the husband convey to the wife the property held in their joint names.

First, the husband argues that the wife failed to prove by "clear and convincing" evidence incurable physical impotency on his part. *Fluharty v. Fluharty*, 8 W. W. Harr. 487, 193 *A.* 838, 840. The husband is, of course, correct in arguing that the plaintiff, in this case the wife, in an action for annulment of marriage necessarily assumes that burden. The trial judge held that the wife had discharged the burden.

It serves no purpose to review the details of the evidence. We have reviewed the record and are satisfied that the ruling below to the effect that the wife had sustained the burden of proving that the husband was sexually impotent, at least as to her, was probably incurable as a "pure form" sexual deviate, and by reason thereof had an incapacity for copulation with the wife, was correct.

We think it also established beyond doubt that the husband's incapacity was entirely due to psychic causes. The evidence is clear that he suffered from no physical defect of a sexually incapacitating nature. We think it apparent that psychogenic causes had made the husband physically unable to copulate, at least with the woman he had married.

The question before us, therefore, is whether 13 *Del. C.* § 1551 permits the annulment of a marriage when the cause of impotency is psychic rather than physical in origin.

The wife argues that the statute, being in the alternative, permits proof of either "incurable physical impotency" or "incapacity for copulation" for any recognized medical reason. This argument was rejected by the Superior Court in *S. v. S.*, 3 *Terry* 192, 29 *A.* 2d 325, when it held that the second phrase was merely explanatory of the word "impotency", and that the ground of annulment authorized by the statute was incurable physical impotency. If the questions were of first instance in this State we would have some doubt as to the propriety of the construction, but we do not re-examine it for, in the view we take of the case, it is unnecessary to do so. Consequently, we neither approve nor disapprove the rule of *S. v. S.*

■ We think this statutory ground for annulment of marriage is an incurable physical inability on the part of one spouse to copulate with the other. This being so, it follows that whether the inability stems from physical or mental defects, provided in either case that the resulting condition is incurable, the requirement of the statute is met.

We think this conclusion inevitable as to the meaning of the statute, and we note that similar statutes in other states have been similarly construed. *Cf. Tompkins v. Tompkins*, 92 *N. J. Eq.* 113, 111 *A.* 599; *Godfrey v. Shatwell*, 38 *N. J. Super.* 501, 119 *A.* 2d 479; *Kaufman v. Kaufman*, 82 *U. S. App. D. C.* 397, 164 *F.* 2d 519; *Vanden Berg v. Vanden Berg, Sup.*, 197 *N. Y. S.* 641.

■ The husband does not argue strenuously against the conclusion that impotency under that statute may be the result of psychic causes. The main thrust of this argument is that the wife has failed to establish *incurable* impotency. He cites several authorities but we do not find them to be persuasive.

Thus, *Heller v. Heller*, 116 *N. J. Eq.* 543, 174 *A.* 573, held the uncorroborated testimony of the wife insufficient to

prove incurability. In *Godfrey v. Shatwell, supra,* the court recognized that impotency as a ground for annulment could be psychic in origin, but denied a decree at the suit of the husband because of his ratification of the marriage after knowledge of his wife's condition. In *Lorenz v. Lorenz,* 93 *Ill.* 376, there was no proof beyond an admission by the husband of impotency. *S. v. E.,* 164 *Eng. Rep.* 1266, appears to us as of doubtful soundness, but in any event there was no proof of incurability.

The husband is, of course, correct in maintaining that the asserted impotency must be incurable, but in the case before us we think this fact has been established to a reasonable certainty by the testimony of the psychiatrist who not only had examined him but who for a period of time had had him under treatment. In the opinion of this doctor, the husband "probably" could be classed as incurably physically impotent. It is true that the doctor testified that it was possible to treat the husband's psychic troubles, but the fair import of his testimony is that the possibility of a cure was remote. The trial judge concluded that the doctor's opinion was that the husband was incurably physically impotent. We think this conclusion correct from the evidence.

Secondly, the husband argues that, assuming his impotency, still the wife had sufficient knowledge of it at the time of the marriage to preclude its assertion by her as a ground for annulment. The difficulty with this argument is that the record does not establish knowledge on the part of the wife. At most, the wife can be said to have been told prior to marriage a veiled hint of past sexual deviation by the husband. She questioned him about it but he passed it off with the explanation that it had happened long ago and no longer troubled him. We consequently agree with the trial judge that there is no evidence that the wife, prior to marriage, had knowledge of the husband's impotency, or of facts sufficient to warn her of its possible existence.

Thirdly, the husband charges that personal habits of cleanliness, or lack of cleanliness, on the part of the wife dissipated his sexual desires toward the wife. He argues that, therefore, she cannot obtain annulment for his alleged impotency caused, or at least aggravated, by certain offensive habits of her own.

The argument is subject to two infirmities. First, it does not appear that it was made to the trial judge, which is a prerequisite to its being made in this court. Second, it rests upon the uncorroborated testimony of the husband alone. In divorce and annulment proceedings, such testimony is not entitled to complete acceptance. *Lecates v. Lecates*, 8 *W. W. Harr.* 190, 190 *A.* 294; *Heller v. Heller, supra.*

For the foregoing reasons, we affirm that portion of the judgment appealed from granting an annulment, and the resumption by the wife of her name prior to the marriage.

One further matter remains for consideration, *viz.*, the power of the Superior Court to compel a conveyance to the wife of real estate held by the parties as tenants by the entireties.

Initially, we observe that the Superior Court has been granted no specific statutory power in this respect. The powers of the court in annulment proceedings thus differ from the powers of the court in divorce proceedings for, by 13 *Del. C.* § 1531, the court is specifically empowered, after the granting of a divorce, to order such division of property as might be equitable. If, following the grant of an annulment, the Superior Court lacks power to order a division of property, or if, having the power, it fails to exercise it, it seems apparent that the dissolution of the marriage would transform by operation of law an estate by the entireties into an estate in common in which each of the former spouses would own an undivided half interest. *Townsend v. Townsend*, 5 *W. W. Harr.* 493, 168 *A.* 67. The husband in the case before us argues for

this result, although upon what precise basis is not clear since he apparently concedes the jurisdiction of the Superior Court to settle the property rights of the parties in an annulment action.

In any event, we think the authority of the Superior Court to settle property rights of the parties in an annulment action has been held to exist by *Du Pont v. Du Pont*, 7 *Terry* 592, 87 *A.* 2d 394, 397. In that case the precise question was the power of the Superior Court to award suit money to a wife in the absence of specific statutory authority to do so. We held that the statutory grant to the Superior Court of jurisdiction over annulments (13 *Del. C.* § 1501) by practical necessity carried with it the inherent powers exercised by the Ecclesiastical Courts of England which had long developed and proclaimed "rules of procedure and defined those extraordinary incidents to matrimonial jurisdiction which were deemed necessary * * * to equalize the positions of the contending parties." Those powers, not inappropriate to our judicial system, were conferred upon the Superior Court with the grant of general jurisdiction over annulment.

In the Ecclesiastical Courts a sentence of annulment of marriage, or technically of divorce *a vinculo matrimonii*, pronounced the marriage a nullity *ab initio*. The result was that the wife became *feme sole* and took back her separate property. In addition, adjustments of property between the parties were directed. See *Shelford on Marriage and Divorce*, 477-479, and cf. *Stephens v. Totty*, Cro. Eliz. 908, 78 *Eng. Rep.* 1130; *Aughtie v. Aughtie*, 1 *Phill. Ecc.* 201, 161 *Eng. Rep.* 961. It follows that the Superior Court has similar powers.

It appears that the house in which the husband now claims an undivided interest was purchased primarily with the money of the wife derived from the sale of a property owned by her prior to the marriage. Likewise, the contract to purchase the property now in dispute was entered into by the wife prior to the marriage, which purchase was completed

after the marriage. The husband contributed to the purchase less than $100. The balance of the purchase price, above some $5,800, contributed by the wife in cash, was derived from a mortgage of $10,000 on the property. Title was taken as tenants by the entireties because of the wife's belief that it was required by law. Subsequently, all the mortgage payments were made by the wife, although the husband did personally make some small improvements on the property. We think in all fairness and justice that the property may be regarded substantially as the wife's separate property brought by her to the marriage.

In the light of the facts, the trial judge ordered that the fee to the property be conveyed to the wife after the payment by her to the husband of $450, the value of his contribution, and after she had obtained his release from the bond signed in connection with the mortgage. The settlement of property rights after annulment of marriage is within the discretion of the trial judge and we think his decision in this respect is more than justified by the facts.

The judgment of the Superior Court is affirmed.