**Ronald E. DOLAN**

v.

**Lucille E. DOLAN.**

Supreme Judicial Court of Maine.

Nov. 25, 1969.

Frank B. Foster, Mechanic Falls, Trafton, Scales & Smith, by L. Damon Scales, Jr., Auburn, for plaintiff.

Laurier T. Raymond, Jr., Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

This is an appeal by the plaintiff-husband from a judgment of the Superior Court denying an annulment of marriage upon his complaint as for divorce under 19 M. R.S.A. § 632 and from the court's order on the wife's separate motions allowing her the sum of $300 as counsel fee for the defense of the annulment proceeding and $200 to cover attorney's fee and other necessary expense in the defense of the instant appeal.

The statute, 19 M.R.S.A. § 632, provides as follows:

> "When the validity of a marriage is doubted, either party may file a complaint as for divorce, and the court shall order it annulled or affirmed according to the proof; but no such order affects the rights of the defendant unless he was actually notified of the action or answered to the complaint."

Pursuant to statutory directive, the original complaint based plaintiff's challenge respecting the validity of the marriage upon defendant's fraud allegedly perpetrated upon him at the time of marriage by reason of defendant's pre-marital fraudulent representations that she intended to consummate the marriage by normal marital sexual relations while in truth and in fact she had no such intentions. The plaintiff later moved to amend

the complaint by adding the following paragraph:

"That the Defendant at the time of the marriage ceremony was psychologically or physically impotent under the purview of the laws of marriage; that she did not then, nor did she have during the period of living with the Plaintiff, the capacity to consummate her said marriage by normal sexual relations with the Plaintiff, which is the implied term and goes to the essence of a marriage contract."

The motion to amend was allowed by the court without objection. We note that no amended complaint nor any amendment as such was filed thereafter, nor was any answer made to the allegations of the prospective amendment, the parties apparently believing that the granting of a motion to amend is tantamount to the allowance of the amendment itself. We refer to Tibbetts v. Dr. D. P. Ordway Plaster Company, 1918, 117 Me. 423, 425, 104 A. 809, and Picard v. Libby, 1956, 152 Me. 257, 127 A.2d 490, as authorities to pinpoint the difference between "motion to amend allowed" and "amendment allowed". The presiding justice as it appears from his decision, however, rendered his decree on the basis that the amendment had been fully allowed, and in the light of the uncontested posture of the case thereon we review accordingly.

■ The presiding justice found as a fact that the defendant was not guilty of the deceit, misrepresentation or fraud, alleged against her in the original complaint. He found that defendant's resistance to sexual intercourse during the 4½ months of cohabitation by the parties prior to plaintiff's separation from the home was accompanied by outbursts of uncontrollable emotional behavior, and that, whatever may have been the cause, it was "real to her, not simulated and not a practiced deception." He further found that such emotional disposition had not demonstrated itself before marriage and that the defendant was not then aware of such latent propensity. He concluded that the plaintiff had failed to prove his original complaint and was not entitled to an annulment of his marriage on the ground of fraud. A review of the record convinces us that this particular finding of fact by the presiding justice sitting without a jury must stand as it was not clearly erroneous. M.R.C.P., Rule 52(a); Dresser v. Dresser, 1967, Me., 225 A.2d 395; Gruber v. Gruber, 1965, 161 Me. 289, 211 A.2d 583.

The plaintiff further claims that the court below erred as a matter of law in refusing to make a finding that the defendant at the time of the marriage was psychologically and physically impotent within the meaning of the divorce and annulment statute and that said refusal to annul the marriage was clear error.

■ The presiding justice ruled that "[t]he plaintiff having failed to prove, by a fair preponderance of the evidence, those allegations in his complaint and amendment thereto that allege grounds for annulment, the annulment is denied and the validity of the marriage is affirmed." This judgment must necessarily be predicated upon an implied subsidiary judicial opinion that the court had the power to annul the marriage under the plaintiff's amendment upon proof of impotency, notwithstanding the absence of fraud. The defendant raises a threshold jurisdictional objection respecting that phase of the presiding justice's decree. The wife suggests that impotency is expressly listed as a cause for divorce while the Legislature has never deemed it necessary to rest jurisdiction in annulment proceedings upon any specific grounds. She claims that the doctrine of 'expressio unius est exclusius alterius' impels the conclusion that divorce is the exclusive remedy for the dissolution of the marriage bond on the basis of impotency. This contention is without merit.

■ While proceedings in divorce are civil in their nature as distinguished from criminal, yet they are ecclesiastical in their origin, are regulated entirely by statute,

and the power of the court to deal with them is wholly derived from legislative grant. Preston v. Reed, 1945, 141 Me. 386, 392, 44 A.2d 685; Simpson v. Simpson, 1920, 119 Me. 14, 15, 109 A. 254; Belanger v. Belanger, 1968, Me., 240 A.2d 743. This Court voiced identical views concerning the action for annulment of marriage, pointing out its sui generis characteristic. See, Mitchell v. Mitchell, 1940, 136 Me. 406, at 423, 11 A.2d 898. In that case, our Court stated that under some statutes such a proceeding has been held to be a divorce suit, but surely was not a proceeding in equity.

Historically, so far as the nullification of the marital status was concerned, our Legislature equated divorce from the bonds of matrimony with the dissolution of the marriage. Originally there existed but one action, divorce, which could be decreed for causes of prohibited affinity or consanguinity, for non-eligibility to marry by reason of a former husband or wife alive at the time of the second marriage, and impotency, all causes which when proven might be thought as invalidating the marriage from the beginning. The only other cause for divorce was adultery "in either of the parties." R.S.1821, c. LXXI, § 3. The statute then did not provide for a specific action of annulment as distinguished from the suit for divorce. During the period between revisions, the Legislature continued this general indistinctive aspect of our divorce law. It added as causes more commonly associated with divorce proper, desertion, habitual drunkenness and sentencing to state prison. At the same time our lawmakers empowered the courts to grant divorces in cases more commonly identified with annulments, such as the granting of a like divorce to the other party to a previous divorce and decreeing the same where marital consent was obtained by gross and deliberate fraud or false pretences. See, P.L. 1834, c. 116, § 2; P.L. 1835, c. 177, § 1. In the 1840 revision of statutes, our Legislators enacted the original annulment section which read as follows: (Chapter 89, Section 21)

"Whenever the validity of a marriage is denied or doubted, either party may file a libel for annulling the same, in like manner, as a libel for a divorce; and, upon due proof of the nullity of the marriage, it shall be declared void by sentence of said court; and, upon due proof of its validity, the court, by their decree, shall affirm the marriage."

Side by side with this express annulment proceeding, the Legislature re-enacted, as part of its comprehensive legislation regulating divorce, that a divorce could be decreed for reasons of impotency in either of the parties, existing at the time of the marriage, c. 89, § 2 (second), in cases of marital consent obtained under fraud or false pretenses, c. 89, § 2 (sixth), and in situations where a like divorce was permissible to the other party to a previous divorce, c. 89, § 2 (seventh). It is obvious from the breadth of the legislative language that our legislators initially never intended any narrow and restricted limitation of the annulment provisions of our divorce laws. By the enactment of the public laws of 1850, c. 171, § 4, the Legislature repealed that part of the divorce act which enumerated the several specific causes for divorce and empowered the justices of the supreme judicial court to decree divorces

"when such justice[s] in the exercise of a sound discretion, may deem the same reasonable and proper, conducive to domestic harmony and consistent with the peace and morality of society."

The statutory clause empowering either party to seek annulment of the marriage when its validity was denied or in doubt by filing a libel as for divorce was never modified in any material aspect and has remained the same throughout the history of our divorce law. When the Legislature removed the specific statutory causes for divorce without repealing the annulment provision, it cast in manifest relief the independent posture of the annulment remedy. That the lawmakers through the public laws of 1883, c. 212, reestablished our divorce laws on the basis of specific

causes for divorce in no way altered the construction to be given to the annulment section. In grounding the right to seek annulment "whenever the validity of a marriage is denied or doubted", the Legislature chose truly sweeping terms exhibiting an intent to vouchsafe to any party to the marriage contract an independent remedy in the nature of a declaratory judgment whereby the marital status under consideration might be dissolved or affirmed according to the proof, without regard to any coexistent right of action in divorce for the same cause. See, Buzzell v. Buzzell, 1967, Me., 235 A.2d 828, 831. The court below had jurisdiction to entertain the plaintiff's complaint for annulment of marriage.

■ Did the court err in refusing to annul the marriage on the ground of impotency? The test to be applied is whether as a matter of law the evidence in the record warrants the court's decree that the plaintiff failed to prove, by a fair preponderance of the evidence, those allegations of his amended complaint, to wit, that the defendant at the time of the marriage ceremony was psychologically or physically impotent within the purview of the divorce law of the State of Maine then existing. Mitchell v. Mitchell, 1940, 136 Me. 406, 418, 11 A.2d 898, 904.

A review of the record justifies a finding that during some 4½ months of cohabitation between the parties the marriage was never consummated by coition. On their wedding night as on every other occasion when matrimonial conversation was attempted, the plaintiff's advances at sexual intercourse were met by physical resistance on the part of the wife accompanied by outbursts of uncontrollable emotional behavior. The evidence is undisputed on that score. The underlying cause for the wife's conduct is ascribed by the husband to her physical or psychological impotency while she denies this with the assertion that her husband's approach toward the sexual act was to blame for her reaction to his advances. The parties disclosed that the wife at the suggestion of the husband submitted to a medical examination with the result, admitted without objections, that the doctor did not think that there was anything wrong physically with Mrs. Dolan. She cooperated in reading literature furnished them by the doctor. The parties discussed their problem with their minister. The wife was only 18 years old at the time while the plaintiff, a college student, was 21. The record does not reveal that any medical or psychiatric treatment was ever sought to further diagnose the wife's condition so as to obtain proper treatment for its potential cure, or, in the alternative, for a proper evaluation of the cause of their marital problem, and, if it should be impotency, for an assessment of its probable incurability or permanency.

■ The burden was upon the plaintiff to establish the allegations of his complaint, in the instant case impotency of the wife. See, Mitchell v. Mitchell, 1940, 136 Me. 406, 415, 11 A.2d 898, 903; Jones, Appellee v. Jones, Appellant, 1939, 136 Me. 238, 241, 8 A.2d 141, 142. The plaintiff relying upon the ground of impotency to secure an annulment of his marriage must, as in divorce proceedings, prove the essential elements of statutory impotency by the fair preponderance of the evidence. See, Gruber v. Gruber, 1965, 161 Me. 289, 211 A.2d 583.

■ Impotency or impotence is defined as the want of power for copulation. Heller v. Heller, 1934, 116 N.J.Eq. 543, 174 A. 573. As a ground for divorce or annulment of marriage it means an inability to engage in, or a lack of capacity for, normal and complete sexual intercourse. 24 Am. Jur.2d, Divorce and Separation, § 79; 27A C.J.S. Divorce § 19.

■ The incapacity must have existed at the time of the marriage. Even though our present statute does not expressly attach that qualification to impotence as a

cause for divorce, our Legislature originally permitted divorces for "impotency in either of the parties, existing at the time of the marriage." R.S.1840, c. 89, § 2 (Second). There is no sound reason to believe that our lawmakers in their continued use of the unrestricted term "impotence" intended any different meaning from that ascribed to it from the beginning. This Court so construed the statute in Chase v. Chase, 1867, 55 Me. 21, 23.

■ Impotency at the time of marriage may be curable, incurable, accidental or temporary. Even though our statute does not list impotence in terms of incurable impotency and does not define its meaning as a cause for divorce, we approximate legislative intendment with incapacity to copulate of a permanent and lasting nature. Although marriage is a civil contract, immediately upon its consummation public policy endows the marital relationship with enduring rights and responsibilities concerning which the State attaches primary importance and exercises ultimate control. Whitehouse v. Whitehouse, 1930, 129 Me. 24, 26, 149 A. 572. In terms of State interest, the dissolution of the marriage in annulment suits has virtually the same impact upon the public good as the liquidation of the marital status through divorce. Public policy would be in a constant state of frustration if the judiciary attributed to the Legislature in its use of the term impotence as a cause for divorce or nullity of marriage a meaning encompassing any temporary or occasional incapacity for sexual intercourse. We hold with virtually universal authoritative acceptance that impotence within the purview of our statute regulating divorce and annulment denotes a permanent inability on the part of one of the parties to the marriage contract to perform the complete act of sexual intercourse. The incapacity must be incurable. 1 Bishop on Marriage and Divorce, Vol. 1, Sec. 786, p. 338 and Vol. 2, Sec. 1321, p. 508; Kempf v. Kempf, 1863, 34 Mo. 211, 213; Long v. Long, 1941, 191 Ga. 606, 13 S.E.2d 349;

Payne v. Payne, 1891, 46 Minn. 467, 49 N.W. 230, 24 Am.St.Rep. 240; Bascomb v. Bascomb, 1852, 25 N.H. 267; 24 Am. Jur.2d, Divorce and Separation, § 81; 27A C.J.S. Divorce § 19; 35 Am.Jur., Marriage, § 124, p. 257; 55 C.J.S. Marriage § 13.

■ The wife's incapacity for sexual intercourse in the instant case may have originated from psychological rather than physical causes. Medical and psychiatric treatises will reveal that certain women have a phobic fear of the sexual act causing them to resist strenuously any consummation of the marriage. Matrimonial incapacity whether the result of psychogenic causes or due to physical defects, provided that in either case the resulting condition is of a permanent and incurable nature, constitutes impotence within the meaning of section 691 of chapter 19 of the revised statutes relating to divorce and may support an annulment decree under section 632. See, Kaufman v. Kaufman, 1947, 82 U.S.App.D.C. 397, 164 F.2d 519; Rickards v. Rickards, 1960, Del., 3 Storey 134, 166 A.2d 425; Godfrey v. Shatwell, 1955, 38 N.J.Super. 501, 119 A.2d 479. We will not presume impotency. There is no proof from which incurability of the underlying cause of the defendant wife's incapacity may be inferred, the evidence being quite consistent with a curable condition by proper medical or psychiatric treatment or both.

The lower court, in the posture of the evidence as disclosed by the instant record, concluded that the plaintiff had failed to prove, by a fair preponderance of the evidence, those allegations in his complaint and amendment thereto that allege grounds for annulment and so denied the annulment and affirmed the validity of the marriage. In resting his decision upon plaintiff's failure of proof of "those allegations in his complaint and amendment thereto *that allege* grounds for annulment," the presiding justice has caused us to be uncertain as to the full purport of his decree. We cannot say with absolute assurance from the particular wording of his

judgment whether the justice below did rule that impotence unconnected with any fraudulent misrepresentation was a proper ground for annulment. If he did not reach the merits of plaintiff's contention that his wife was impotent at the time of the marriage within the terms of the statute permitting annulment of the marriage for such cause because of an erroneous belief that annulment did not lie under such circumstances, still the plaintiff would not be aggrieved as the lower court, in the absence of adequate proof of permanency of the wife's condition, even upon a proper application of the law, could have reached no other result than deny the annulment and affirm the marriage as it did.

In reaching our decision, we must steer our course strictly by the guiding light of legal principles to the exclusion of sympathetic considerations. This, public policy compels respecting the marriage status. Brooks-Bischoffberger v. Bischoffberger, 1930, 129 Me. 52, 149 A. 606.

In his points on appeal, the plaintiff asserts error in the allowance of counsel fees to the wife for the defense of the annulment proceeding and for her legal services and expenses on appeal and contests the amounts allowed. The hearing on the separate motions for such monetary assistance was held subsequently to the court's decree denying annulment and no separate appeal was taken from these collateral orders. The plaintiff, however, sought appellate relief therefrom by obtaining leave from the presiding justice to further extend the time to file designations of contents of the record in his pending appeal in the annulment suit in the light of the evidentiary hearing and decree relating to counsel fees and for the purpose of securing a transcript of the evidence taken in the supplementary hearing. The presiding justice's favorable action thereon justified plaintiff's belief that by including in his pending appeal assignments of error arising from these collateral suppletory decrees he could lawfully raise before this Court the counsel fee issue.

The authorities are in conflict respecting the reviewability of collateral orders made after the entry of judgment or decree in the main action on an appeal from that judgment or decree. For a listing of the authorities and the basic rationale supporting their divergent views, see 5 C.J.S. Appeal & Error § 1493. We do recognize that the instant orders for counsel fees were reviewable on appeal in and of themselves, Strater v. Strater, 1963, 159 Me. 508, 196 A.2d 94, and the better practice when such orders are made subsequent to the entry of judgment in the divorce or annulment action and after the filing of a notice of appeal therefrom is to file a separate appeal from the orders themselves and obtain later consolidation of the appeals. The issue of counsel fees, however, in the instant case was timely assigned as points on appeal with seeming sanction of the court below. The appeal from the main judgment had not been perfected at the time. The issue was fully briefed and argued by both parties. In the light of the purpose underlying the interpretation of our rules of civil procedure "to secure the just, speedy and inexpensive determination of every action," Rule 1, M.R.C.P. we review. See Valluzzo v. Valluzzo, 1925, 103 Conn. 265, 130 A. 126.

Initially, we must determine whether counsel fees, either for the wife's defense at the trial level or for the prosecution of her appeal, were legally allowable in annulment proceedings. In *Strater,* supra, our Court decided that the statute pertaining to divorce did grant jurisdiction to the Superior Court and empowered it to order counsel fees for the wife both at the trial level and in the defense of the husband's appeal, observing that the statutory prerequisite of the pendency of the divorce action was satisfied since the judgment of divorce was not final until the determination of the appeal. The defendant justifies

the allowance to her of counsel fees under the same statutory provisions involved in *Strater,* 19 M.R.S.A. § 693, which reads as follows:

> "*Pending a divorce action,* the court may order the husband to pay to the wife, or to her attorney for the wife, sufficient money for her defense or prosecution thereof, * * *." (Emphasis supplied.)

We rule that the Legislature used the term 'divorce action' in its generic sense including both the complaint for divorce and for annulment of marriage. This legislative terminology was made necessary with the adoption on December 1, 1959 of the Maine Rules of Civil Procedure, under which "a complaint for divorce" was substituted for the previous statutory libel for divorce, Rule 80(c), M.R.C.P., and "a complaint as for divorce" in cases of annulment of marriage for the former libel as for divorce, Rule 80(i), M.R.C.P. Section 693, of chapter 19, M.R.S.A., previously read as follows: (R.S.1954, c. 166, § 59.)

> "*Pending a libel,* the court or any justice thereof in vacation, may order the husband to pay to the wife, or to her attorney for the wife, sufficient money for her defense or prosecution thereof, * * *." (Emphasis supplied.)

It is obvious that no change in substance was intended when the legislators in P.L. 1961, c. 317, § 553, made the necessary amendment to have the statutory provisions reflect the Rules' lexicon. We note that the identical change was made in relation to section 60, of chapter 166, of the revised statutes of 1954, from the wording "pending a libel" to "pending a divorce action." P.L.1961, c. 317, § 554. The reference section provides that the court may prohibit the husband from imposing any restraint on the personal liberty of the wife pending a libel (now pending a divorce action). When this section empowering the courts to protect the wife against her husband's restraints was first enacted, it expressly stated that it applied after a libel had been

filed for the dissolution of a marriage (annulment) or for a divorce from the bonds of matrimony, or from bed and board. R.S. 1840, c. 89, § 26. The several interim revisions had the same provision in condensed form until by P.L.1929, c. 227, the Legislature adopted the short form "pending a libel" which it had carried for the section of the statute relating to the allowance of counsel fees. Indeed the counsel fee section was originally enacted later than the so-called restraint section. P.L.1853, c. 30, provided that "pending *any* libel for divorce, the court may order the husband to pay the clerk for the use of the wife such sum of money as they shall deem proper, to be expended by her in the defense or prosecution of said libel * * *" (Emphasis added.) In the revision of 1857, the counsel fee section was made to read "pending a libel" R.S.1857, c. 60, § 5, while the annulment provision, section 14, was condensed to read "when the validity of a marriage is doubted, either party may file a libel as for divorce." The restraint clause then used the language, "after a libel is filed in either class of cases herein described." It is obvious that legislative intendment in the use of the several phrases "pending any libel for divorce" in 1853, and "pending a libel" or "after a libel is filed in either class of cases" in 1857 was the same and that the counsel fee section applied both to the action for divorce proper and to the annulment suit in the same way as the restraint clause. This construction is consistent with the express legislative purpose from the very beginning to provide a comprehensive plan of relief to the wife in marital disputes, whether they be divorce or annulment. The wife's underlying need for counsel fees and other relief is just as great in one type of case as in the other. Public policy is equally concerned whether the purpose of the action be the dissolution of the marriage by decree of divorce or by an annulment of the matrimonial contract.

The fact that the services of counsel had been advanced on credit in the wife's defense of the annulment action at

the time of the allowance of the fees is no bar to such a decree as these necessary legal services were most probably advanced with the expectation that such allowance would be made during the pendency of the action. See, Button v. Button, 1966, Me., 222 A.2d 245.

 The amounts allowed to the wife for her counsel fee in the defense of the plaintiff's annulment action and in the defense of plaintiff's appeal from the court's decree affirming the marriage were within the sound judicial discretion of the justice presiding and a reading of the record reveals no abuse of discretion. See, Strater, supra.

The entry will be

Appeal denied.

TAPLEY, J., sat at argument but retired before the opinion was adopted.

MARDEN, Justice (dissenting in part).

I concur in the result on the merits only. Annulment is statutory both jurisdictionally, Brooks-Bischoffberger v. Bischoffberger, 129 Me. 52, 53, 149 A. 606, and as to subject matter, Mitchell v. Mitchell 136 Me. 406, 423, 11 A.2d 898, and DuPont v. DuPont, 8 Terry 231, 90 A.2d 468 (Del. 1952) cert. den. 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651. See 19 M.R.S.A. § 632.

When a statute does not specify grounds for annulment, marriage being a civil contract, Whitehouse v. Whitehouse, 129 Me. 24, 26, 149 A. 572, 35 Am.Jur., Marriage § 1, it may be annulled "for any reason for which equity gives relief in respect to contracts generally." 55 C.J.S. Marriage § 50. Impotence, as distinct from incapacity (non-age) and incompetence (mental disability), is not a ground for avoiding a contract.

It is respectfully submitted that reading impotence into our annulment statute as a ground therefor is both unnecessary and improvident. Unnecessary, for the ag-

grieved party has remedy in divorce proceedings (19 M.R.S.A. § 691), and improvident for in cases where property rights and counsel fees are involved the annulment statute gives no authority to deal with them decretally.

WILLIAMSON, Chief Justice (concurring in result).

I concur in the opinion of Mr. Justice Marden in all respects, except on the issue of counsel fees, and in the opinion of the Court on the issue of counsel fees. I would deny the appeals and so concur with the Court in the result.